OPINION *Page 2 
{¶ 1} Defendant-appellant Edward Frye appeals his conviction and sentence entered by the Stark County Court of Common Pleas, on one count of illegal manufacture of drugs, in violation of R.C. 2925.04(A); and one count of illegal assembly or possession of chemicals for the manufacture of drugs, in violation of R.C. 2925.04(A), following a jury trial. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On August 21, 2006, the Stark County Grand Jury indicted Appellant on the aforementioned charges. Appellant appeared before the trial court for arraignment on September 15, 2006, and entered a plea of not guilty to the Indictment. Appellant subsequently filed a motion to suppress, requesting the trial court suppress all physical evidence collected, and statements he made to the police on the day of his arrest. Appellant argued his constitutional rights had been violated as a result of the police officer's illegal warrantless search as well as the officer's failure to advise Appellant of his Miranda Rights. The trial court conducted a hearing on the motion on October 18, 2006.
 {¶ 3} James Monigold, an officer with the Jackson Township Police Department, testified he was assigned to the Stark County Metro Narcotics Unit ("the Unit") in June, 2006. His duties and responsibilities for the Unit included conducting drug investigations, money laundering investigations, meth lab investigations, and a combination of the three. Monigold recalled, on June 28, 2006, he was part of an investigation involving Appellant. The officer explained the Unit had received information Appellant was actively cooking methamphetamine at his residence as well *Page 3 
as a garage located at 11195 Beech Street, Alliance, Ohio, which housed Frye's Trucking ("the Garage"), Appellant's father's business. Appellant's home address is 11243 Beech Street.
 {¶ 4} Monigold, Sgt. Oliver, and Agent Crane proceeded to the Garage, and found the garage door and the service entrance opened. The officers entered the building and spoke with Appellant. The officers advised Appellant they were conducting an investigation which centered around the production of methamphetamine. They further advised Appellant they were aware he recently had been caught with items relating to the drug in Summit County. When asked if he knew anything about it, Appellant initially stated he did not.
 {¶ 5} Sgt. Oliver and Agent Crane proceeded to Appellant's residence at 11243 Beech Street, while Monigold continued to speak with Appellant. Monigold told Appellant, "If there are things here, I want to know about them", and then asked Appellant if there was anything at the location. Appellant advised Monigold there were chemicals in a burn pile behind the Garage. Appellant agreed to show the officer the pile. When Ofc. Monigold observed the pile, he found several burnt items which he knew, through his training and experience, were related to the manufacturer of methamphetamine. Monigold and Appellant then walked into the Garage. Monigold read Appellant his Miranda Rights and presented him with aMiranda form, which Appellant signed. After signing the form, Appellant asked the officer if he thought he (Appellant) needed an attorney. Monigold advised Appellant he could not answer that question. Monigold noted there was no indication Appellant was intoxicated or under the influence of any substance. The officer also saw no indication Appellant did not *Page 4 
know or understand what was going on. Thereafter, Appellant executed a consent to search form for his residence at 11243 Beech Street as well as the Garage at 11195 Beech Street.
 {¶ 6} Appellant accompanied Officer Monigold and the other officers during the search of the residence and the Garage. Appellant advised the officers he had cooked methamphetamine in his shed. Inside the shed, the officers found items similar to items discovered during other meth lab investigations. The officers searched the Garage and found a receipt for pseudoephedrine as well as an empty blister pack in a trashcan. Appellant told the officers he sold the pills to an individual for $5.99 a box and that person was going to make the methamphetamine and bring it back to him. In an incinerator on the site, the officers found a large volume of stripped matches, which are used to obtain red phosphorus for the manufacture of methamphetamine, chemical containers, and pseudoephedrine packages. When the search was completed, the officers placed Appellant under arrest.
 {¶ 7} Appellant also testified at the suppression hearing. Appellant conceded he gave Officer Monigold consent to search his residence. Appellant explained, he informed Monigold he did not have the authority to give permission to search the Garage, however, the officer demanded he "Sign the f___ paper!". Tr. of Suppression Hearing at 30. Appellant stated although he ultimately signed the consent to search form, he continued to tell the officer he did not have the authority to do so. After Officer Monigold read him his Miranda Rights, Appellant told the officer he needed a "lawyer now". The officer replied he did not need a lawyer yet. Appellant testified he knew he was not free to leave, and felt he had no choice but to answer the officer's questions. *Page 5 
Appellant remarked his statements were coerced because he had asked the officer for a lawyer, and because he did not have authority to give consent to search the Garage.
 {¶ 8} After hearing the testimony, the trial court denied Appellant's motion to suppress. The matter proceeded to jury trial on November 2, 2006.
 {¶ 9} Officer Monigold's trial testimony was similar to the testimony he gave at the suppression hearing. Officer Monigold detailed the four step procedure for producing methamphetamine. The officer provided an account of his initial contact with Appellant as well as the events which occurred immediately thereafter. As Officer Monigold testified as to the items found during the search, he explained the significance of each item as it relates to the manufacture of methamphetamine.
 {¶ 10} Sgt. John Oliver, a deputy with the Stark County Sheriffs Office assigned to the Unit, testified, on June 28, 2006, he proceeded to Appellant's residence and the Garage to conduct surveillance until Ofc. Monigold and Agent Crane arrived. While Monigold searched the Garage, Oliver went to the residence. The sergeant returned to the Garage, then walked to the shed with Monigold and Appellant. Sgt. Oliver stood outside with Appellant while Monigold searched the interior of the shed. The sergeant stated Appellant informed him there was no methamphetamine inside the shed. Appellant later told Sgt. Oliver he had cooked methamphetamine at least ten times over the last two years, eight of the cooks in the shed and two in the Garage. Appellant also told the Sergeant he had been using methamphetamine for two years, and started cooking the drug about a year and a half earlier. Sgt. Oliver recalled Appellant estimated he yielded about 5 grams of the drugs per each cook. Appellant also informed the sergeant where he purchased the necessary items. *Page 6 
 {¶ 11} Jay Spencer, a criminalist with the Canton Crime Lab, testified he received evidence from the Unit for analysis on July 3, 2006. Spencer tested two glass pipes, two glass tubes and a cigarette lighter. He examined the pipes and tubes to determine if there was any drug residue remaining inside. One of the pipes and one of the tubes tested positive for methamphetamine. Spencer also analyzed a glass jar, but it was negative for drug residue. Spencer explained, if the container had been used during the extraction process when the ephedrine is removed from the pseudoephedrine pills, the only items left in the jar would be the binders and the starches used to make the physical tablet.
 {¶ 12} After hearing all of the evidence and deliberations, the jury found Appellant guilty as charged in the Indictment. The trial court sentenced Appellant to a four year term of imprisonment on each count, and ordered the sentences to be served concurrently.
 {¶ 13} It is from this conviction and sentence Appellant appeals, raising the following assignments of error:
 {¶ 14} "I. THE TRIAL COURT'S FINDING OF GUILT IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 {¶ 15} "II. THE TRIAL COMMITTED PLAIN ERROR WHEN IT ALLOWED EXPERT TESTIMONY FROM A WITNESS NOT QUALIFIED TO PRESENT SAID TESTIMONY.
 {¶ 16} "III. THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS EVIDENCE AND STATEMENTS." *Page 7 
 I {¶ 17} In his first assignment of error, Appellant maintains the jury's verdict was against the manifest weight and sufficiency of the evidence.
 {¶ 18} In State v. Jenks (1981), 61 Ohio St.3d 259,574 N.E.2d 492, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.
 {¶ 19} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380,387, 678 N.E.2d 541, 1997-Ohio-52, citing State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily *Page 8 
for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, syllabus 1.
 {¶ 20} Appellant was convicted of one count of illegal manufacture of drugs, in violation of R.C. 2925.04(A), which provides no person shall knowingly manufacture or otherwise engage in any part of the production of a controlled substance. Appellant was also convicted of illegal assembly or possession of chemicals for the manufacture of drugs, in violation of R.C. 2925.041, which provides no person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in Schedule I or II, in violation of Section 2925.04 of the Revised Code. Possession is defined as "Having control over a thing or substance", but possession "may not be inferred solely by mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01 (K).
 {¶ 21} Under R.C. 2923.03(F), a defendant "may be convicted of [an] offense upon proof that he was complicit in its commission, even though the indictment is `stated * * * in terms of the principal offense' and does not mention complicity." State v. Herring, 94 Ohio St.3d 246, 251,2002-Ohio-2796. "To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime." State v. Johnson,93 Ohio St.3d 240 syllabus, 240, 2001-Ohio-1336, syllabus. "Participation in criminal intent may be inferred from presence, *Page 9 
companionship and conduct before and after the offense is committed." Id. at 245 (Citation omitted).
 {¶ 22} Appellant argues his conviction was against the manifest weight and sufficiency of the evidence because the State failed to introduce physical evidence of the chemicals necessary to manufacture methamphetamine in a red phosphorus lab; evidence was destroyed; and the individual responsible for the crime was his co-defendant, Randy Tanner. We disagree. The State presented both direct and circumstantial evidence of Appellant's guilt.
 {¶ 23} The testimony at trial revealed Appellant made several admissions to members of the Unit regarding his active and ongoing involvement in manufacturing methamphetamine. During the search, officers found component ingredients integral to the manufacture of the drug in the shed behind Appellant's residence, the Garage, and vehicles registered in his name. Ofc. Monigold testified he found chemicals, paraphernalia, as well as indicia of pseudoephedrine purchased by Appellant. Although iodine was not found on the premises, Appellant told Sgt. Oliver he purchased iodine at a feed store in Copley, Ohio.
 {¶ 24} Jay Spencer of the Stark County Crime Lab testified one of the two glass pipes he analyzed tested positive for methamphetamine. Although another pipe and a glass jar tested negative for the illegal substance, Spencer explained, after pseudoephedrine is extracted from the tablet in which it is compounded, the only ingredients remaining are the fillers; therefore, the fact the actual drug was not found in the glass jar does not conclusively prove it was not used in the manufacturing of methamphetamine. *Page 10 
 {¶ 25} Based upon the foregoing and all the evidence in the record, we find the jury's verdict was not against the manifest weight or sufficiency of the evidence.
 {¶ 26} Appellant's first assignment of error is overruled.
 II {¶ 27} In his second assignment of error, Appellant submits the trial court committed plain error in allowing expert testimony from a witness who was not qualified to present such testimony. Specifically, Appellant asserts Ofc. Monigold was not qualified to provide expert testimony about methamphetamine labs.
 {¶ 28} The decision to admit the testimony of an expert is generally within the broad discretion of the trial court, and will not be disturbed absent a showing of an abuse of discretion. State v.Reiner (2000), 89 Ohio St.3d 342, 2000-Ohio-190. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v.Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
 {¶ 29} Opinion testimony must be considered in light of Evid.R. 701 and 702. The opinion must be based upon the perceptions of the witness and helpful to the trier of fact. Evid. R. 701. In the case of an expert opinion, it must relate to matters outside the knowledge, experience, training or education of the trier of fact, and be based upon reliable, scientific, technical or other specialized information. Evid. R. 702. Stated otherwise, "For expert testimony to be admitted at trial, it must: 1) relate to matters beyond the knowledge or experience possessed by lay persons or dispel common *Page 11 
misconceptions held by lay persons; 2) be based on reliable scientific, technical, or other specialized knowledge; 3) assist the trier of fact to understand the evidence or to determine a fact in issue; 4) be relevant and material to an issue in the case; and 5) have a probative value which outweighs any prejudicial impact. Evid.R. 702; State v.Daws (1994), 104 Ohio App.3d 448, 462, 662 N.E.2d 805." State v.Thompson, (Sept. 23, 1997), Franklin App. No. 96APA12-1660. The individual offered as an expert need not have complete knowledge of the field in question, as long as the knowledge the individual possesses will aid the trier of fact in performing its fact-finding function,State v. D'Ambrosio (1963), 67 Ohio St.3d 185, 191. The testimony offered must provide information to the fact-finder which is "sufficiently beyond common experience." State v. Buell (1986),22 Ohio St.3d 124, 131.
 {¶ 30} At trial, Ofc. Monigold testified as to his experience in investigating methamphetamine labs. Monigold stated he is a "meth certified response personnel." As part of that training, Monigold learned how to dismantle process labs, and became familiar with the process of making methamphetamine and conducting methamphetamine investigations. Monigold testified there are different ways to make methamphetamine, and described the four step process commonly used. Although individual labs may utilize different chemicals, pseudoephedrine or eudoephedrine is the one necessary ingredient.
 {¶ 31} Defense counsel did not move to exclude the evidence or otherwise object to the admission of the evidence at trial; therefore, Appellant waived all but plain error.
 {¶ 32} Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." *Page 12 
Notice of plain error is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Cooperrider (1983), 4 Ohio St.3d 226, 448 N.E.2d 452. An alleged error does not constitute plain error unless, but for the error, the outcome of the trial clearly would have been otherwise.State v. Stojetz, 84 Ohio St.3d 452, 455, 1999-Ohio-464.
 {¶ 33} We cannot conclude the trial court's admission of Ofc. Monigold's testimony constituted plain error. Ofc. Monigold's testimony related to matters beyond the knowledge and experience of the jury; was based upon specialized knowledge and training; assisted the trier of fact in understanding the evidence and determining a fact in issue; was relevant and material; and had a probative value which outweighed any prejudicial impact. Accordingly, such testimony was properly admitted as expert testimony.
 {¶ 34} Appellant's second assignment of error is overruled.
 III {¶ 35} In his third assignment of error, Appellant challenges the trial court's denial of his motion to suppress.
 {¶ 36} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See State v.Fanning (1982), 1 Ohio St.3d 19, 437 N.E .2d 583; State v. Klein (1991),73 Ohio App.3d 486, 597 N.E.2d 1141; State v. Guysinger (1993),86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue the trial court failed to apply the appropriate test or *Page 13 
correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. SeeState v. Williams (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141, overruled on other grounds. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93, 641 N.E.2d 1172;State v. Claytor (1993), 85 Ohio App .3d 623, 620 N.E.2d 906;Guysinger, supra. As the United States Supreme Court held in Ornelas v.U.S., (1996), 517 U.S. 690, 116 S.Ct. 1657, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 {¶ 37} In a motion to suppress, the trial court assumes the role of trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate witness credibility. Guysinger, supra, at 594 (Citations omitted). Accordingly, an appellate court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Id. (Citation omitted).
 {¶ 38} Following the presentation of evidence at the suppression hearing, the trial court ruled the evidence would not be excluded as Appellant "clearly permitted consents to be given on all of the locations." Tr. of Suppression Hearing at 44. Appellant acknowledges he gave consent to Ofc. Monigold to search the Garage, his father's business. Appellant explains, however, he gave his consent only after the officer *Page 14 
demanded he do so and after telling the officer a number of times he did not have authority to grant permission to search the Garage. Appellant concludes the officer exceeded the scope of Appellant's consent, and the trial court erred in failing to suppress the evidence found in the Garage.
 {¶ 39} We need not reach a conclusion as to whether Appellant had the authority to grant permission to the police to search the Garage. Appellant cannot establish he was prejudiced by the admission of such evidence in light of all the other evidence presented at trial.
 {¶ 40} Appellant further argues he did not give police consent to search the shed. We disagree. During the search of his residence, Appellant voluntarily informed the officers he cooked methamphetamine in the small shed located behind his residence. The officers asked Appellant if they could search the shed. Appellant led them to the shed, opened the door, and provided them access into the building. Given the circumstances, we do not find the officers exceeded the scope of Appellant's consent in searching the shed.
 {¶ 41} Finally, Appellant maintains the trial court should have granted his motion to suppress as Officer Monigold failed to advise Appellant the statements he made prior to being read hisMiranda Rights were not admissible at trial, but subsequently compelled Appellant to make the same statements after being Mirandized. In support of his position, Appellant relies upon the Ohio Supreme Court's decision in State v. Farris, 109 Ohio St.3d 519, 2006-Ohio-3255. We findFarris to be distinguishable.
 {¶ 42} In Farris, an Ohio State patrolman stopped the appellant for speeding. Id. at ¶ 1. The trooper approached the appellant's vehicle on the right side. When the *Page 15 
appellant lowered the passenger window, the officer smelled a light odor of burnt marijuana emanating from the interior of the vehicle. Id. The trooper asked the appellant to step out of the vehicle. Although the trooper did not conduct a field sobriety test on the appellant, he did conduct a pat down search and found no evidence of contraband or drugs. Id. at ¶ 2.
 {¶ 43} The trooper took the appellant's car keys and requested he sit in the front seat of the cruiser. Id. The trooper informed the appellant he smelled marijuana. Id. at ¶ 3. Without administering Miranda warnings or seeking consent to search the car, the trooper asked the appellant about the smell of marijuana. The appellant replied his housemates had been smoking marijuana when he left the house. Id. The trooper then advised the appellant he was going to search the car, and specifically asked the appellant whether there were any drugs or any drug devices in the vehicle. Id. The appellant admitted a marijuana pipe was located in a bag in the trunk. Id.
 {¶ 44} At the subsequent suppression hearing, the trooper testified after the appellant made those statements, he immediately administeredMiranda warnings, but did not inform the appellant his previous admissions could not be used against him. The trooper then asked the appellant the same questions and obtained the same responses regarding the location of the drug paraphernalia. Id. at ¶ 4. A search of the vehicle uncovered nothing in the interior, but drug paraphernalia was found in the trunk. The appellant was charged with a misdemeanor possession of drug paraphernalia. Id. at ¶ 5.
 {¶ 45} The appellant filed a motion to suppress the statements he made to the trooper as well as the evidence seized from the trunk. Id. The trial court ruled the *Page 16 
statements made prior to the trooper's administering Miranda warnings were to be suppressed, however, the statements made after the warnings were admissible. Id. The trial court also ruled the seized paraphernalia was admissible. Id. The appellant subsequently entered a no contest plea and the trial court entered a judgment of conviction. Id. at ¶ 7. The appellant appealed, and the appellate court affirmed the trial court's ruling. The appellate court found the statements the appellant made both before and after the Miranda warnings were voluntary, and once warned, he knowingly and intelligently waived his Miranda Rights.
 {¶ 46} The Ohio Supreme Court found the officer's treatment of the appellant after the original traffic stop placed the appellant in custody for practical purposes. The officer had patted down the appellant, taken his car keys, instructed him to sit in the cruiser, and informed him he was going to search the vehicle because of the scent of marijuana. Id. at ¶ 14. The Farris Court found the officer's questioning of the appellant, both temporally and substantively, constituted a single interrogation; therefore, the appellant was not in a position to make an informed choice and his pre- and post-Miranda statements were not admissible.
 {¶ 47} Unlike Farris, we do not find Appellant's pre-Miranda
statements to be inadmissible. The evidence does not show Appellant was in custody at the time he made the pre-Miranda statements. The defendant in Farris clearly was in custody. Because Appellant was not in custody, we find it unnecessary to determine, pursuant to Farris, whether Appellant's post-Miranda were so intertwined as to constitute a single interrogation. Such analysis only becomes necessary whenpre-Miranda statements are found to be inadmissible. *Page 17 
 {¶ 48} Finally, Appellant argues the trial court should have granted his motion to suppress because he asserted his right to counsel, but the police officer refused to provide him with representation. At the suppression hearing, Off. Monigold testified Appellant asked him if he needed an attorney. Ofc. Monigold stated he told Appellant he could not make that decision for him. Ofc. Monigold recalled Appellant, thereafter, never asked for an attorney or requested to speak with one. In contrast, Appellant testified he told the officer, "I need a lawyer now." Tr. of Suppression Hearing at 31. According to Appellant, Ofc. Monigold told him he did not need an attorney. As the trier of fact, the trial court was free to accept or reject any or all of the testimony presented by Ofc. Monigold and Appellant at the suppression hearing. The trial court obviously found Ofc. Monigold's rendition of the discussion to be more credible.
 {¶ 49} Appellant's third assignment of error is overruled.
 {¶ 50} The judgment of the Stark County Court of Common Pleas is affirmed.
By: Hoffman, J. Gwin, P.J. and Edwards, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to Appellant. *Page 1