[Cite as *State v. Hatfield*, 2011-Ohio-597.]

COURT OF APPEALS
MORROW COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Julie A. Edwards, P.J. |
| Plaintiff-Appellant | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 10-CA-8 |
| DAVID HATFIELD | : | |
| | : | |
| | : | |
| Defendant-Appellee | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Morrow County Municipal
                              Court Case No. 2009-TRC-454


JUDGMENT:                     REVERSED AND REMANDED

DATE OF JUDGMENT ENTRY:       February 2, 2011


APPEARANCES:

For Plaintiff-Appellant:                For Defendant-Appellee:

Eric C. Penkal 0084240                  W. Jeffrey Moore 0023429
Assistant Morrow County Prosecutor      326 S. High St., Ste. 300
60 E. High St.                          Columbus, Ohio 43215
Mt. Gilead, Ohio 43338

*Delaney, J.*

{¶1} Plaintiff-Appellant, the State of Ohio, appeals the trial court's judgment granting Appellee's Motion to Suppress. Defendant, David Hatfield, is the Appellee.

{¶2} On February 8, 2009, Appellee was driving in Morrow County on Township Road 49 ("TR 49"). Trooper Morris Johnson of the Ohio State Highway Patrol observed Appellee traveling left of center on TR 49. Trooper Johnson testified that TR 49 is 19 feet wide, which is a sufficient width for two lanes of traffic and that Appellee was driving left of the center of his lane of travel, almost in the middle of the road.

{¶3} After following Appellee for approximately a mile and observing this traffic violation, Trooper Johnson activated his overhead lights and initiated a traffic stop. Upon approaching Appellee's vehicle, Trooper Johnson noticed that Appellee had a moderate odor of alcohol on or about his person, that his eyes were glassy, and that his speech was slurred. When Trooper Johnson asked Appellee to step out of the vehicle, Appellee was a bit unsteady on his feet and leaned up against the side of his vehicle. As Trooper Johnson told Appellee why he had stopped him, Appellee admitted to driving left of center, stating that it is his common practice to do so to avoid potholes and deer.

{¶4} Trooper Johnson had Appellee perform two field sobriety tests, the one legged stand and the walk and turn test. He then conducted the HGN test on Appellee and noted six of six clues to indicate that Appellee was under the influence of alcohol.

{¶5} After Appellee was read his *Miranda* rights and waived those rights, he admitted that he had consumed four to five beers that evening, with the last beer being consumed approximately 20 minutes prior to the traffic stop.

{¶6} Trooper Johnson arrested Appellee for violations of R.C. 4511.25, for driving left of center, and R.C. 4511.19(A)(1) for operating a vehicle under the influence of alcohol.

{¶7} Appellee filed a plea of not guilty and thereafter filed a Motion to Suppress evidence obtained as a result of the traffic stop, arguing there was no reasonable suspicion to effectuate the traffic stop and no probable cause to arrest Appellee.

{¶8} On June 22, 2009, a hearing was held on the Motion to Suppress. After the hearing and after post-hearing briefs were filed by the parties, the trial court granted Appellee's motion, stating that the trooper lacked reasonable suspicion to stop Appellee's vehicle. The trial court heavily relied upon the Ohio Department of Transportation's Location and Design Manual (also referred to as the Roadway Design Manual) in making its determination.

{¶9} Appellant now appeals the trial court's ruling and raises one Assignment of Error:

{¶10} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW IN FAILING TO FIND THAT THE TROOPER HAD REASONABLE AND ARTICULABLE SUSPICION TO STOP THE APPELLE'S [SIC] VEHICLE WHEN THE TROOPER OBSERVED A VIOLATION OF ORC 4511.25."

I.

{¶11} In its sole assignment of error, Appellant, State of Ohio, asserts that the trial court erred when it suppressed evidence resulting from the defendant's traffic stop and subsequent arrest for operating a vehicle under the influence of alcohol.

{¶12} Appellate review of a trial court's decision to grant or deny a motion to suppress involves a mixed question of law and fact. *State v. Long* (1998), 127 Ohio App.3d 328, 713 N.E.2d 1. During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, (1996), 75 Ohio St.3d 148, 661 N.E.2d 1030. A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Metcalf* (1996), 111 Ohio App.3d 142, 675 N.E.2d 1268. Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams* (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141.

{¶13} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See *State v. Fanning* (1982), 1 Ohio St.3d 19, 437 N.E.2d 583; and *State v. Klein* (1991), 73 Ohio App.3d 486, 597 N.E.2d 1141. Second, an appellant may argue that the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See *State v. Williams* (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the

appropriate legal standard in any given case.  *State v. Curry* (1994), 95 Ohio App.3d 623, 620 N.E.2d 906.

{¶14}  Appellant challenges the trial court's judgment entry on two separate grounds: first, that the trial court erred as a matter of law by raising the standard of proof for an investigative traffic stop from that of reasonable suspicion to beyond a reasonable doubt when the Trooper's testimony established a violation of R.C. 4511.25; and second, that the trial court erred as a matter of law by taking judicial notice of ODOT's Location and Design Manual and relying on that manual even though it is subject to reasonable dispute given the lack of testimony regarding the condition of Township Road 49 in Morrow County, Ohio.

{¶15}  In analyzing these claims, we must consider the purpose of the Fourth Amendment as well as R.C. 4511.25.

{¶16}  The Fourth Amendment of the Constitution of the United States guarantees each citizen a right to be free from unreasonable governmental intrusions. Specifically, it states:

{¶17}  "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

{¶18}  "The Fourth Amendment's prohibition against unreasonable searches and seizures has always been interpreted to prevent a search that is not limited to the particularly described 'place to be searched, and the persons or things to be seized,'

U.S. Const., Amend. IV, even if the search is made pursuant to a warrant and based upon probable cause." *Florida v. Royer* (1983), 460 U.S. 491, 499, 103 S.Ct. 1319.

{¶19} The predicate for permitting seizures on suspicion short of probable cause "is that law enforcement interests warrant a limited intrusion on the personal security of the suspect. The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. This much, however, is clear: an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." Id., at 500, citing, e.g., *United States v. Brignoni-Ponce*, 422 U.S., at 881-882, 95 S.Ct., at 2580-2581; *Adams v. Williams*, 407 U.S., at 146, 92 S.Ct., at 1923.

{¶20} It is the State's burden to demonstrate that the seizure it seeks to justify was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure.

{¶21} R.C. 4511.25 states, in pertinent part:

{¶22} "(A) Upon all roadways of sufficient width, a vehicle or trackless trolley shall be driven upon the right half of the roadway, except as follows:

{¶23} "(1) When overtaking and passing another vehicle proceeding in the same direction, or when making a left turn under the rules governing such movements;

{¶24} "(2) When an obstruction exists making it necessary to drive to the left of the center of the highway; provided, any person so doing shall yield the right of way to

all vehicles traveling in the proper direction upon the unobstructed portion of the highway within such distance as to constitute an immediate hazard;

{¶25} "(3) When driving upon a roadway divided into three or more marked lanes for traffic under the rules applicable thereon;

{¶26} "(4) When driving upon a roadway designated and posted with signs for one-way traffic;

{¶27} "(5) When otherwise directed by a police officer or traffic control device."

{¶28} The question as to whether a traffic stop violates the Fourth Amendment to the United States Constitution requires an objective assessment of a police officer's actions in light of the facts and circumstances then known to the officer. *United States v. Ferguson* (6th Cir. 1993), 8 F.3d 385, 388. "Thus, the question whether a Fourth Amendment violation occurred in this case depends upon an objective assessment of the officer's actions at the time of the traffic stop, and not upon the officer's actual (subjective) state of mind." *City of Dayton v. Erickson* (1996), 76 Ohio St.3d 3, 6, 665 N.E.2d 1091. Even if the purpose of the stop is pretextual, so long as there is an articulable reasonable suspicion or probable cause to stop the vehicle for a traffic violation, the stop is justified. Id. at 11-12.

{¶29} Trooper Johnson testified that he observed Appellee violating R.C. 4511.25 and that he initiated a traffic stop based on that violation. Upon approaching the vehicle, Trooper Johnson recognized Appellee and also noticed a moderate odor of alcohol on or about Appellee's person and noted that Appellee had glassy eyes and slurred speech. At that time, Trooper Johnson asked Appellee to step out of the vehicle. Appellee admitted that he was driving in the middle of the road and that he

commonly does so. When Appellee stepped out of the vehicle, he swayed briefly and leaned up against his vehicle for a moment. Trooper Johnson had Appellee perform two field sobriety tests, the one legged stand test and the walk and turn test. Trooper Johnson then conducted the HGN test on Appellee. After conducting these tests, the trooper arrested Appellee and *Mirandized* him. Appellee waived his *Miranda* rights. Trooper Johnson asked Appellee if he had been drinking and Appellee admitted that he had consumed four to five beers, with the last beer being consumed approximately 20 minutes before Trooper Johnson pulled Appellee over. Based on these circumstances, Trooper Johnson arrested Appellee on one count of Operating a Vehicle Under the Influence ("OVI") and for driving left of center.

{¶30} Appellee filed a Motion to Suppress evidence from the traffic stop, arguing that the officer did not have reasonable, articulable suspicion to stop him nor did he have probable cause to arrest Appellee. After hearing the trooper testify, the trial court asked counsel to submit post-hearing briefs in lieu of closing arguments. Counsel for both the State and Appellee limited their arguments to the issues of reasonable suspicion for the stop and probable cause for arrest. Neither party focused on the width of the road or whether the road was in compliance with ODOT regulations as set forth in the Location and Design Manual, specifically section 301.1.2.

{¶31} In its judgment entry granting Appellee's motion, the trial court stated as follows:

{¶32} "[T]he testimony revealed that Defendant was westbound on Township Road ("TR") 49 at 12:00 A.M. when Trooper Johnson of the Ohio State Highway Patrol observed the Defendant driving, almost continuously, down the center of TR 49. The

trooper observed no other erratic driving or traffic violation. . . The trooper approached the defendant's vehicle and explained why he stopped him. The Defendant stated that he always drove down the center of county roads to avoid potholes and potential deer.

{¶33} "TR 49 is a blacktop township road with no centerlines or fog lines, measuring approximately 19 feet in width. At the time of the stop, the roadway was dark, wet, and contained no other traffic. Snow and/or ice covered the ground on each side of the roadway. Defendant is charged with left of center in violation of Ohio Rev. Code 4511.25(A) and OVI in violation of Ohio Rev. Code 4511.19(A)(1)(a).

{¶34} "The threshold issue is whether the trooper had a 'reasonable and articulable suspicion' to stop Defendant because Defendant committed or was committing a traffic violation. *Dayton v. Erickson* (1996), 76 Ohio St. 3, 11.

{¶35} "Ohio Rev. Code 4511.25(A) requires motor vehicles to be driven on the right half of the roadway 'upon all roadways of sufficient width.'"

{¶36} The trial court went on to extensively discuss what is considered sufficient width under ODOT's Location and Design Manual. The court decided to take judicial notice of the manual, likening it to trial courts taking judicial notice of the NHTSA manual. The court then engaged in mathematical calculations, determining that TR 49, which was determined to be 19 feet wide according to Trooper Johnson's measurements, was too narrow for fog lines, center lines, and therefore was too narrow to reasonably expect a vehicle to drive on the right half of the roadway when it is wet, dark, and there is ice on the sides of the roadway. The court presumed that the township viewed the road as too narrow to "stripe." Though the court acknowledged that a car or truck could be driven on the right half of the roadway, a "common sense

look at TR 49 and reading of the ODTRD Manual indicates that, even under perfect conditions and at a speed approaching the lawful limit, such operation would be unsafe." The court then held that TR 49 is not of "sufficient width" as required by ORC 4511.25.

{¶37} The court then stated, "It is therefore the opinion of this Court that Defendant did not violate Ohio Rev. Code 4511.25(A). There was also no evidence of erratic driving to justify a non-*Erikson* stop. Absent any extraordinary circumstance, including but not limited to, on-coming [sic] traffic or the defendant's vehicle cresting the top of a hill, the trooper did not have a reasonable and articulable suspicion to stop the Defendant for a traffic violation."

{¶38} While we understand the trial court's desire to be thorough in its decision, we find that the trial court overstepped its bounds in its judgment entry. By opining that "Defendant did not violate Ohio Rev. Code 4511.25(A)", the trial court raised the burden of proof from a preponderance of the evidence to beyond a reasonable doubt. The objective of a suppression hearing is not to determine whether or not the defendant violated the statute. That is a matter left to the trier of fact at trial. It is the role of a trial court in a suppression hearing such as this to determine whether there was sufficient evidence of the officer having reasonable and articulable suspicion to effectuate a traffic stop and then whether there was probable cause to arrest the defendant for the charges.

{¶39} Moreover, we find the trial court's conclusion that "[t]here was . . . no evidence of erratic driving to justify a non-*Erikson* stop. Absent any extraordinary circumstance, including but not limited to, on-coming [sic] traffic or the defendant's

vehicle cresting the top of a hill, the trooper did not have a reasonable and articulable suspicion to stop the Defendant for a traffic violation.", to be in error.

{¶40}  The trooper testified that Appellee was driving in the center of the road, left of center.  The Appellee admitted that he was driving in the center of the road and that it is his common practice to do so to avoid potholes and deer.  The consideration of a defense to the crime does not negate the fact that there is reasonable suspicion to stop and probable cause to arrest.  The trial court acknowledges the facts as set forth by Trooper Johnson, the parties do not dispute the underlying facts, and the court does not conclude that Trooper Johnson was not credible.

{¶41}  We also find that the trial court was in error in considering ODOT's Location and Design Manual and the width of the road as well as whether it was the township's conclusion that the road was too narrow to stripe.  Such matters, again, may be appropriate to consider at trial, but not at a suppression hearing.

{¶42}  Based upon the testimony of Trooper Johnson that Appellee was driving left of center and Appellee's admission that he was driving left of center, we find that reasonable suspicion did exist for Trooper Johnson to effectuate a traffic stop. Moreover, based on Appellee's appearance and odor of alcohol on his person, his performance on the field sobriety tests, and the Appellee's *Mirandized* admission that he had consumed four to five beers immediately preceding being pulled over, we find that there was also probable cause for arresting Appellant.

{¶43} Accordingly, we find Appellant's assignment of error to have merit and we sustain the assignment of error.  This matter is reversed and remanded for proceedings consistent with our opinion.

By: Delaney, J.

Edwards, P.J. and

Gwin, J. concur.

_____
HON. PATRICIA A. DELANEY


_____
HON. JULIE A. EDWARDS


_____
HON. W. SCOTT GWIN

[Cite as *State v. Hatfield*, 2011-Ohio-597.]

IN THE COURT OF APPEALS FOR MORROW COUNTY, OHIO

FIFTH APPELLATE DISTRICT

|                        |   |                |
|------------------------|---|----------------|
| STATE OF OHIO          | : |                |
|                        | : |                |
| Plaintiff-Appellant    | : |                |
|                        | : |                |
|                        | : |                |
| -vs-                   | : | JUDGMENT ENTRY |
|                        | : |                |
| DAVID HATFIELD         | : |                |
|                        | : |                |
| Defendant-Appellee     | : | Case No. 10-CA-8 |
|                        | : |                |

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Morrow County Municipal Court is reversed and remanded.  Costs assessed to Appellee.

_____
HON. PATRICIA A. DELANEY


_____
HON. JULIE A. EDWARDS


_____
HON. W. SCOTT GWIN