[Cite as *State v. Leder*, 2019-Ohio-2866.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2018-10-072 |
| | : | O P I N I O N |
| - vs - | | 7/15/2019 |
| | : | |
| BRADLEY R. LEDER, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY MUNICIPAL COURT
Case No. 2018TRC7515

D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas A. Horton, 76 South Riverside Drive, Batavia, Ohio 45103, for appellee

W. Stephen Haynes, Clermont County Public Defender, Robert F. Benintendi, 301 East Main Street, Batavia, Ohio 45103, for appellant

**S. POWELL, J.**

{¶ 1} Appellant, Bradley R. Leder, appeals the decision of the Clermont County Municipal Court denying his motion to suppress. For the reasons outlined below, we affirm.

**Facts and Procedural History**

{¶ 2} On May 29, 2018, a complaint was filed charging Leder with operating a vehicle while under the influence of alcohol in violation of both R.C. 4511.19(A)(1)(a) and (A)(1)(d). The complaint also charged Leder with two "turn signal violations" for failing to properly use his turn signal in violation of R.C. 4511.39(A). The charges arose after Trooper Haggerty with the Ohio State Highway Patrol initiated a traffic stop of Leder's vehicle after he observed Leder commit what he believed was at least one, if not more, traffic violations; namely, Leder's failure to properly use his turn signal in violation of R.C. 4511.39(A) on two separate occasions, as well as a marked lane violation in violation of R.C. 4511.33(A)(1). Leder later submitted to a breath-alcohol test that indicated he had a breath-alcohol-content of .150.

{¶ 3} On July 24, 2018, Leder filed a motion to suppress. In support of his motion, Leder argued Trooper Haggerty lacked a reasonable suspicion to initiate a traffic stop of his vehicle. The trial court held a hearing on Leder's motion on September 4, 2018. The lone witness to testify at the suppression hearing was Trooper Haggerty. Trooper Haggerty's testimony was supplemented by a video recording of the traffic stop taken from Trooper Haggerty's cruiser camera. The following is a summary of Trooper Haggerty's testimony and evidence taken from that video recording.

{¶ 4} On May 28, 2018 at 4:03 a.m., Trooper Haggerty was parked perpendicular to I-275 looking east across all three lanes of northbound traffic near Union Township, Clermont County, Ohio. At that time, Trooper Haggerty observed a vehicle pass his cruiser traveling nine miles per hour below the posted 65 mile per hour speed limit. The vehicle caught Trooper Haggerty's attention due to the vehicles' "slow rate of speed." It is undisputed that Leder was the driver of the vehicle in question.

{¶ 5} Approximately 15 seconds after observing Leder's pass, Trooper Haggerty pulled his cruiser onto I-275 and began following Leder northbound towards the exit ramp

- 2 -

from I-275 to State Route 125. Upon his approach to the exit ramp, Trooper Haggerty testified that he witnessed Leder change lanes without properly using his turn signal in violation of R.C. 4511.39(A). Pursuant to that statute, "[w]hen required, a signal of intention to turn or move right or left shall be given continuously during not less than the last one hundred feet traveled by the vehicle[.]" Specifically, as Trooper Haggerty testified:

> So there's three lanes on the interstate, there's three lanes and then there's an off ramp to 125 so he merges onto the off ramp and then turns his turn signal on late; if he used it properly he would have to use his turn signal on 100 feet prior to changing lanes or turning right.

{¶ 6} Similarly, when asked if it was his "perception" that Leder was already in the exit lane when he used his turn signal, Trooper Haggerty testified:

> Yes, he already changed lanes and then turned his turn signal on. It would be the same as if I'm in the left lane then I turn in the right and I'm in the right lane and then I go and flick my turn signal on.

Trooper Haggerty testified he witnessed Leder commit this traffic violation from approximately 900 to 1,000 feet behind Leder's vehicle.

{¶ 7} Upon exiting onto the off ramp from I-275 to State Route 125, Trooper Haggerty observed Leder travel down the exit ramp towards a red traffic light. Trooper Haggerty testified he then watched as Leder "rolls through the red light, he doesn't blow it but he slightly rolls through it" before making a right hand turn onto State Route 125. Similar to Leder changing lanes from I-275 onto the exit ramp to State Route 125, Trooper Haggerty testified Leder made this right hand turn onto State Route 125 "and as he's making it he turns his right turn signal on late again[.]" The video recording taken from Trooper Haggerty's cruiser camera confirms this testimony.

{¶ 8} Trooper Haggerty testified he then witnessed Leder commit what he believed was a marked lane violation when "his right two tires touch the white dotted line to the right

of the vehicle." Pursuant to R.C. 4511.33(A)(1), "[a] vehicle * * * shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic[.]" As Trooper Haggerty testified while watching the video recording taken from his cruiser camera:

> Q: Okay, thank you, stop [the video recording]. I guess I missed it, I didn't see any marked lanes violation there, did you, Officer?
>
> A: I did, sir.
>
> Q: Where did you see it?
>
> A: His right two tires touched the white dotted line, doesn't go over the line, it just touches them.
>
> Q: You were able to see that from your vehicle?
>
> A: Yes, sir.

{¶ 9} Trooper Haggerty also testified:

> Q: So you think right there you were able to see the –
>
> A: Approximately a second after, a second before, yes.
>
> Q: Well, we'll keep moving.
>
> A: Stop. Keep going. Stop. That white line right there he just passed, he just touched that line, you see a white dotted line right there.
>
> Q: Well, I don't see him touching anything but that's my perception. Is that where you think it happened?
>
> A: Yes, sir.

{¶ 10} Following this testimony, the trial court questioned Trooper Haggerty regarding Leder's exit from I-275 onto the exit ramp to State Route 125, during which Trooper Haggerty testified:

> Q: You had indicated before that you made the observation that 100 feet prior to changing lanes he had changed a lane without using the turn signal?
>
> A: Yes.

Q: Which lanes do you believe he moved to and from?

A: You're supposed to turn your signal on to signal that you're taking the off ramp but he takes the off ramp and then he's about underneath that sign right there is when he flicks his turn signal on.

Q: So it's your testimony that he was already on the off ramp then turned his turn signal on to make that –

A: Correct, Your Honor.

Q: To make that lane change?

A: Yes, Your Honor.

{¶ 11} Thereafter, when asked by the trial court about Leder's right hand turn onto State Route 125 and the alleged marked lane violation committed a short time later, Trooper Haggerty testified:

Q: Okay.

A: And then as well when he's turning right onto 125 he's late as well turning his turn signal on.

Q: Okay. And the marked lanes violation is the one that you had just indicated?

A: Yes, Your Honor.

{¶ 12} After a brief recess to compare Trooper Haggerty's testimony to that of the video recording taken from Trooper Haggerty's cruiser camera, the trial court judge returned to the bench and issued a decision denying Leder's motion to suppress. In so holding, the trial court noted that it had found Trooper Haggerty's testimony "to be both reasonable and credible" when comparing it to the video recording taken from his cruiser camera. Specifically, as the trial court stated when issuing its decision:

[T]he sole issue is whether or not [Trooper Haggerty] had reasonable and articulable suspicion to stop Mr. Leder's motor vehicle. The testimony was that on May 28th of 2018 at approximately I believe 4:03 A.M. starting on I-275 in Clermont County, Ohio Trooper Haggerty was stationary at that location,

- 5 -

the defendant's vehicle drove past him, Trooper Haggerty testified that on I-275 there are three lanes, ultimately there's an off ramp lane that you can exit onto State Route 125 and that he indicated that, he being Trooper Haggerty, indicated that he observed Mr. Leder's vehicle not make a proper lane change within the 100 feet requirement under 4511.39 as he was trying to exit at that location.

{¶ 13} Continuing, the trial court then stated:

Trooper Haggerty indicated and the Court saw on the video as well that when Mr. Leder was turning right from the exit ramp onto 125 that while there was a turn signal it looked like it was about at least at the beginning stages of the actual turn and maybe about halfway through that right turn onto 125. Trooper Haggerty also indicated a marked lanes violation where he saw that the defendant's vehicle had touched the white dotted lines on one occasion.

{¶ 14} Concluding, the trial court stated:

[W]ith the testimony that's here that I have found both to be reasonable and credible I do find that there was a reasonable and articulable suspicion for Trooper Haggerty to stop Mr. Leder's car on that occasion, so at this point in time * * * the motion to suppress is going to be overruled or denied.

{¶ 15} On September 11, 2018, Leder entered a plea of no contest to driving under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a) in exchange for the other charges being dismissed. After engaging Leder in the necessary plea colloquy, the trial court accepted Leder's no contest plea and entered a finding of guilt. The trial court then sentenced Leder to 90 days in jail, with 87 of those days suspended, placed Leder on community control for a period of two years, and ordered Leder pay a $375 fine. The trial court also mandated Leder complete 16 hours of community service and suspended Leder's driver's license for one year.

**Appeal**

{¶ 16} Leder now appeals from the trial court's decision denying his motion to suppress, raising one assignment of error for review. In his single assignment of error,

Leder argues the trial court erred by denying his motion to suppress upon finding Trooper Haggerty had reasonable suspicion to initiate an investigative traffic stop of his vehicle. We find no merit to Leder's claim.

### Standard of Review

{¶ 17} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 15, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence to resolve factual questions and evaluate witness credibility. *State v. Vaughn*, 12th Dist. Fayette No. CA2014-05-012, 2015-Ohio-828, ¶ 8. Therefore, when reviewing the denial of a motion to suppress, this court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Durham*, 12th Dist. Warren No. CA2013-03-023, 2013-Ohio-4764, ¶ 14. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12.

### Reasonable Suspicion to Initiate an Investigative Traffic Stop

{¶ 18} "Ohio recognizes two types of lawful traffic stops." *State v. Stover*, 12th Dist. Clinton No. CA2017-04-005, 2017-Ohio-9097, ¶ 8. One of those lawful traffic stops "is an investigative stop, also known as a *Terry* stop, in which the officer has reasonable suspicion based on specific or articulable facts that criminal behavior is imminent or has occurred." *State v. Bullock*, 12th Dist. Clinton No. CA2016-07-018, 2017-Ohio-497, ¶ 7, citing *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868 (1968). While the concept of "reasonable and articulable suspicion" has not been precisely defined, "[t]he reasonable-suspicion standard

is less demanding than the probable-cause standard used when analyzing an arrest." *State v. Hairston*, Slip Opinion No. 2019-Ohio-1622, ¶ 10, citing *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581 (1989). The determination whether an officer had reasonable suspicion to initiate an investigative stop "must be based on the totality of circumstances 'viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.'" *Id.*, quoting *State v. Andrews*, 57 Ohio St.3d 86, 87-88 (1991).

**Analysis**

{¶ 19} After a thorough review of the record, we find no error in the trial court's decision denying Leder's motion to suppress. That is to say the trial court did not err by finding Trooper Haggerty had reasonable suspicion to initiate an investigative traffic stop of Leder's vehicle after he observed Leder commit what he believed was at least one, if not more, traffic violations; namely, Leder's failure to properly use his turn signal in violation of R.C. 4511.39(A) on two separate occasions, as well as a marked lane violation in violation of R.C. 4511.33(A)(1). Although we find no mistake occurred in this case, this outcome would not change even if Trooper Haggerty was mistaken in his belief that a traffic violation had in fact occurred. This is because "[a] police officer's objectively reasonable belief that a traffic violation has occurred, including reasonable mistakes of law, can constitute reasonable suspicion to justify a traffic stop." *State v. Kirkpatrick*, 1st Dist. Hamilton Nos. C-160880 thru C-160882, 2017-Ohio-7629, ¶ 6, citing *Heien v. North Carolina*, __ U.S. __, 135 S.Ct. 530, 540 (2014). Trooper Haggerty's belief that Leder committed at least one, if not more, traffic violations was objectively reasonable under the facts and circumstances of this case.

{¶ 20} Despite this, Leder argues the trial court erred by denying his motion to suppress since Trooper Haggerty's testimony was "not worthy of belief." However, the trial

- 8 -

court, as the trier of fact, was free to accept or reject any or all of the testimony presented by Trooper Haggerty offered at the suppression hearing. *State v. Cummins*, 12th Dist. Clermont No. CA2018-07-051, 2019-Ohio-1496, ¶ 45, citing *State v. Frye*, 5th Dist. Stark No. 2006CA00363, 2007-Ohio-7111, ¶ 48. The trial court found Trooper Haggerty's testimony "both credible and reliable." This court cannot, and will not, "second-guess a trial court's decision to believe the testimony in the record." *State v. Young*, 12th Dist. Clermont No. CA2005-08-074, 2006-Ohio-1784, ¶ 17. This is particularly true here when considering the trial court had the benefit of comparing – and in fact did compare – Trooper Haggerty's testimony with that of the video recording of the traffic stop taken from his cruiser camera.

{¶ 21} Leder also argues the video recording taken from the cruiser camera "debunks" Trooper Haggerty's testimony that he observed Leder commit what he believed were two violations of R.C. 4511.39(A) and one violation of R.C. 4511.33(A)(1). This court, also having the benefit of reviewing the video recording taken from Trooper Haggerty's cruiser camera, finds no merit to Leder's claim. Although not recorded in high definition, the video recording taken from the cruiser camera contains sufficient competent, credible evidence to support the trial court's decision finding Trooper Haggerty had reasonable suspicion to believe Leder committed at least one, if not more, traffic violations. This court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *Durham*, 2013-Ohio-4764 at ¶ 14. Such is the case here.

{¶ 22} For instance, as it relates to Leder's failure to properly use his turn signal in violation of R.C. 4511.39(A), this court is unable to determine from our review of the video recording the exact distance from which Leder used his turn signal to exit from I-275 onto the exit ramp to State Route 125. However, just as Trooper Haggerty testified, the video recording clearly shows Leder did not use his turn signal 100 feet before turning from the exit ramp on I-275 to State Route 125. The video recording instead shows Leder activated

his turn signal *while in the process* of making that right-hand turn as he rolled through a red traffic light. This gave Trooper Haggerty reasonable suspicion that he had just observed Leder, at the very minimum, commit a violation of R.C. 4511.39(A). *See, e.g., Bowling Green v. Barger*, 6th Dist. Wood No. WD-05-082, 2006-Ohio-6187, ¶ 28 (arresting officer had reasonable suspicion to initiate an investigative traffic stop where appellant failed to use his turn signal 100 feet prior to turning); *State v. Acord*, 4th Dist. Ross No. 05CA2858, 2006-Ohio-1616, ¶ 14-15 (arresting officer "held a reasonable belief and/or had probable cause" to initiate an investigative traffic stop where appellant "activate[d] her turn signal just before making a left turn").

{¶ 23} The Ninth District Court of Appeals reached a similar result in *State v. Panaro*, 9th Dist. Medina No. 16CA0067-M, 2018-Ohio-1005. In that case, appellant was charged with driving under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a) and (A)(1)(h). *Id.* at ¶ 2. Appellant was also charged with failing to properly use his turn signal in violation of R.C. 4511.39(A). *Id.* Upon entering a not guilty plea, appellant filed a motion to suppress. In support of his motion, appellant alleged the arresting officer lacked reasonable suspicion to initiate an investigative traffic stop of his vehicle. *Id.* at ¶ 5. The trial court disagreed and found the arresting officer had reasonable suspicion to initiate a traffic stop based on appellant's "failure to properly use a turn signal 100 feet prior to making a left hand turn as observed by the officer" in violation of R.C. 4511.39(A). *Id.* at ¶ 12.

{¶ 24} Appellant appealed the trial court's decision arguing the trial court erred by finding he "failed to put his turn signal on 100 feet prior to turning." *Id.* at ¶ 5. The Ninth District disagreed and held:

> [T]he trial court's finding that [appellant] failed to use his turn signal for 100 feet prior to turning left was supported by competent, credible evidence. From the video, it is impossible to tell how far [appellant] was from the intersection when he activated his turn signal. [The arresting officer], however, did

> testify that while [appellant] did use his turn signal when turning, he failed to use it 100 feet prior to turning. The officer further testified that it was not until [appellant] was nearly at the intersection that he utilized his turn signal. It is clear that the trial court found [the arresting officer's] testimony credible, as the trial court relied on it. As the video does not discredit [the officer's] testimony, we cannot say that the trial court's finding is unsupported by the evidence.

(Internal citations omitted.) *Id.* at ¶ 14. Therefore, because appellant did not argue that "if he indeed failed to use his turn signal 100 feet prior to turning left he would have violated the statute," the Ninth District found appellant "has not demonstrated that the initial stop violated the constitution." *Id.* at ¶ 15.

{¶ 25} The Ninth District's decision in *Panaro* is analogous to the case at bar. The trial court in this case, just like the trial court in *Panaro*, was able to compare Trooper Haggerty's testimony with that of the video recording taken from Trooper Haggerty's cruiser camera. Upon review of that video recording, both the trial court in *Panaro* and the trial court in this case found the arresting officer had reasonable suspicion to believe the officer had just witnessed the defendant commit a violation of R.C. 4511.39(A). We agree that this observation, standing alone, provided Trooper Haggerty with reasonable suspicion to initiate an investigative traffic stop of Leder's vehicle. *See State v. Lowman*, 82 Ohio App.3d 831, 837 (12th Dist.1992) (reasonable suspicion existed for trooper to conduct an investigative traffic stop where the trooper witnessed appellant fail to properly use his turn signal when entering the highway). This is true irrespective of whether Leder also committed a marked lane violation in violation of R.C. 4511.33(A)(1). "A police officer's observation of a person violating a traffic law is sufficient to give rise to the officer's reasonable conclusion that the person is engaged in criminal activity." *State v. Campbell*, 9th Dist. Medina No. 05CA0032-M, 2005-Ohio-4361, ¶ 11.

{¶ 26} The fact that Leder may not have been found guilty of any of the charges

alleged in the complaint bares no significance on this court's holding. Whether the evidence would be sufficient to support a finding of guilt is beyond the scope of this opinion. Again, the issue to be resolved at the suppression hearing was whether Trooper Haggerty had a reasonable suspicion to initiate a traffic stop of Leder's vehicle. "That the state may fail to prove an offense by proof beyond a reasonable doubt does not mean that the much lower standard of probable cause did not exist to support the offense in the first instance." *State v. Mansour*, 12th Dist. Warren No. CA2015-06-051, 2016-Ohio-755, ¶ 26. The same is true as it relates to the even lower, less-demanding reasonable suspicion standard.

{¶ 27} Leder nevertheless directs this court's attention to the decision in *State v. Marcum*, 5th Dist. Licking No. 12-CA-88, 2013-Ohio-2652, wherein the Fifth District Court of Appeals found "the Trooper did not have reasonable, articulable suspicion to stop appellee based on her action in driving on the white fog line[.]" *Id.* at ¶ 17. Leder also directs this court's attention to the decision in *State v. Shaffer*, 3d Dist. Paulding No. 11-13-02, 2013-Ohio-3581, a case in which the Third District Court of Appeals similarly found appellant's "driving onto the white fog line one time for a matter of three seconds" was, standing alone, insufficient to establish requisite reasonable suspicion to stop appellant's vehicle for a marked lane violation. *Id.* at ¶ 27; *see also State v. Smith*, 3d Dist. Marion County No. 9-17-05, 2017-Ohio-5845 (affirming trial court's decision granting a motion to suppress upon finding officer had no reasonable suspicion to initiate a traffic stop because "no traffic violation occurred" when the defendant was observed driving "on top of the white edge line"); *Mentor v. Phillips*, 11th Dist. Lake No. 99-L-119, 2000 Ohio App. LEXIS 6207 (Dec. 29, 2000) (officer did not have probable cause to stop appellant for a marked lane violation where appellant drove "onto the white markings and then back over").

{¶ 28} However, unlike in *Marcum* and *Shaffer*, and by extension *Smith* and *Phillips*, the record in this case indicates Trooper Haggerty initiated a traffic stop of Leder's vehicle

for much more than observing Leder driving onto a marked lane line one time. *Compare Lebanon v. Evans*, 12th Dist. Warren CA2009-08-116, 2010-Ohio-4402, ¶ 13-14 (municipal court did not err by finding trooper had a reasonable suspicion to initiate a traffic stop where the trooper testified he observed appellant's "tires hit the dotted lines" "a couple of times"). The record instead indicates Trooper Haggerty initiated a traffic stop of Leder's vehicle after he observed what he believed constituted two violations of R.C. 4511.39(A) and one violation of R.C. 4511.33(A)(1).

{¶ 29} "[A]n officer who has probable cause necessarily has a reasonable and articulable suspicion, which is all the officer needs to justify a stop." *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, ¶ 22. "Consequently, an officer who reasonably suspects that a traffic violation has occurred need not determine whether a driver's conduct might be excused before initiating a traffic stop." *State v. Rubsam*, 9th Dist. Medina No. 18CA0089-M, 2019-Ohio-2153, ¶ 8, citing *Id.* at ¶ 16-17. That is to say "[a]n officer is not required to determine whether someone who has been observed committing a crime might have a legal defense to the charge." *Mays* at ¶ 17. To hold otherwise would necessitate law enforcement officials to act as the trier of fact – either a jury or the trial court – prior to conducting an otherwise legally permissible and constitutionally protected traffic stop.

**Conclusion**

{¶ 30} The trial court did not err by denying Leder's motion to suppress upon finding Trooper Haggerty had reasonable suspicion to initiate an investigative traffic stop of Leder's vehicle. This is true "even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity." *Dayton v. Erickson*, 76 Ohio St.3d 3 (1996), paragraph one of the syllabus. "It is the role of a trial court in a suppression hearing such as this to determine whether there was sufficient evidence of the officer having reasonable and articulable suspicion to effectuate a traffic

stop and then whether there was probable cause to arrest the defendant for the charges." *State v. Hatfield*, 5th Dist. Morrow No. 10-CA-8, 2011-Ohio-597, ¶ 38. Therefore, because we find Trooper Haggerty conducted a lawful investigative traffic stop of Leder's vehicle, Leder's single assignment of error lacks merit and is overruled.

{¶ 31} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.