[Cite as *State v. Rowley*, 2017-Ohio-5850.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2016-10-019 |
| | : | O P I N I O N |
| - vs - | | 7/17/2017 |
| | : | |
| ANTHONY R. ROWLEY, JR., | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM CLINTON COUNTY COURT OF COMMON PLEAS
Case No. CRI 16-500-173

Richard W. Moyer, Clinton County Prosecuting Attorney, Brian A. Shidaker, 103 East Main Street, Wilmington, Ohio 45177, for plaintiff-appellee

Bieser, Greer & Landis, LLP, Matthew M. Suellentrop, 6 North Main Street, Suite 400, Dayton, Ohio 45402, for defendant-appellant

**HENDRICKSON, P.J.**

{¶ 1}    Defendant-appellant, Anthony R. Rowley Jr., appeals from his conviction in the Clinton County Court of Common Pleas, for illegal assembly or possession of chemicals for the manufacture of drugs with a special finding the offense was within the vicinity of a school. For the reasons that follow, we affirm the decision of the trial court.

{¶ 2}    On July 13, 2016, the Clinton County Grand Jury returned a five-count

indictment charging Rowley with two counts of illegal assembly or possession of chemicals for the manufacture of drugs within the vicinity of a school and three counts of receiving stolen property. Before trial, Rowley pled guilty to two counts of receiving stolen property and, in return, the state dismissed the third count of receiving stolen property. The case proceeded to a jury trial on the remaining counts on August 23-24, 2016. The following people testified on behalf of the state: Chief Detective Josh Riley of the Wilmington Police Department, Rowley's girlfriend, Amanda Smith, Walmart pharmacist, Steven Hogel, and Officer Dan Schweitzer and Detective Dustin Kurkilko of the Warren County Drug Task Force. Rowley testified on his own behalf.

{¶ 3} Riley, a master criminal investigator and evidence technician, testified that upon receipt of information regarding drug activity at 568 North South Street in Wilmington, Ohio, he obtained a search warrant for the residence. In carrying out the search, Riley located four individuals within the residence, including Rowley and Smith in an upstairs bedroom. A search of this bedroom revealed an open book bag next to a mattress, which appeared to be a methamphetamine lab. Due to the volatility of methamphetamine labs, Riley ordered the search team out of the residence and contacted the Warren County Drug Task Force.

{¶ 4} Schweitzer and Kurkilko responded on behalf of the drug task force. Schweitzer testified he has undergone Drug Enforcement Agency ("DEA") training, including basic, undercover, and advanced drug courses, as well as DEA clandestine lab courses. Thus, his training includes, but is not limited to, the identification and disassembly of methamphetamine labs. Upon entry into the bedroom in question, Schweitzer immediately identified the book bag as what he considers a one-pot methamphetamine lab. A search of the book bag revealed a syringe, a digital scale, several plastic bags, coffee filters, plastic bottles containing an organic solvent, cold packs, ammonium nitrate, lithium batteries, vice grips, which are often used to dismantle lithium batteries, and paper work identified as

belonging to Smith and Rowley.

{¶ 5}   Schweitzer thoroughly testified regarding the methamphetamine manufacture process involving a one-pot lab, which includes a plastic bottle, ammonium nitrate, pseudoephedrine, lye, an organic solvent, and lithium batteries.  Based on his training and experience, Schweitzer opined several soda bottles located in the book bag indicated chemical reactions undertaken during the one-pot manufacture process.  Therefore, the drug task force transported the book bag and its contents outside for further testing.  These tests included a "Drager test" to detect ammonia, and tests to detect organic solvent versus water using "PH paper" and cardboard.  One bottle located in the book bag tested positive for the presence of ammonia and another bottle contained organic solvent.

{¶ 6}   Kurkilko assisted Schweitzer throughout the removal and testing process, and likewise, has undergone extensive drug training, including courses at the DEA's clandestine lab.  Kurkilko testified the location of the Wilmington residence was within 1,000 feet of Denver Place Elementary, which he determined by visiting the Clinton County Auditor's website.  Kurkilko testified he ran Smith and Rowley through the National Precursor Log Exchange ("NPLEx"), a database monitored by law enforcement and pharmacies to keep track of pseudoephedrine purchases, the main ingredient used to manufacture methamphetamine.  The couple's NPLEx reports revealed they had made numerous purchases and attempted purchases of pseudoephedrine in the weeks leading up to search of the Wilmington residence.  Based on his training and experience, Kurkilko testified Rowley's NPLEx report indicates Rowley is likely a purchaser who manufactures methamphetamine, as opposed to a consumer of cold medicine.

{¶ 7}   Steven Hogel, a clinical pharmacist for Walmart, testified the NPLEx system is a system for record keeping that every pharmacist in Ohio must use to record purchases of products containing pseudoephedrine.  When a person attempts to purchase a product

containing pseudoephedrine, the person must present a government issued photo identification card, which the pharmacist scans into the NPLEx system. Hogel testified he has extensive experience with the NPLEx system, as it is a regular part of his working day. Hogel testified reports are generated as part of a regular course of business for every pharmacy. Hogel further testified regarding the information contained in the couple's NPLEx reports. Hogel explained he could review such records for any pharmacy in Ohio within Walmart's system. Hogel was unaware of the policies and procedures of other pharmacies, but explained each pharmacy must follow the same procedures with respect to the NPLEx system. The trial court admitted into evidence individual NPLEx reports for Rowley and Smith, which identify several purchases and attempted purchases of products containing pseudoephedrine at various pharmacies in Wilmington in the weeks preceding the search.

{¶ 8}   Smith testified Rowley is her boyfriend and that she agreed to testify and plead guilty in return for a reduced felony charge. Smith explained she and Rowley cooked methamphetamine together once a month using the one-pot method and described the requisite ingredients as "[a]mmonium nitrate, lye, [S]udafed, some sort of fuel, and lithium batteries." Smith further stated she and Rowley were staying in the bedroom where police found her book bag at the time of the search and that the book bag contained the "trash from a cook." The trial court admitted into evidence a letter from Smith to Rowley where she claimed the police were attempting "to get" Rowley on "[her] shit." Smith testified the contents of the letter were not false, explaining that she "wasn't lying" and she "never once didn't say [the contents of the book bag weren't hers]," the contents were "definitely [hers], but not all [hers]." She further stated, she "was trying to take the blame."

{¶ 9}   Rowley testified on his own behalf and adamantly denied his involvement with respect to the methamphetamine lab found at the Wilmington residence. Rowley explained that he has manufactured methamphetamine with Smith in the past, but not on this occasion.

- 4 -

Rather, Rowley explained that he was simply sleeping in the room when the search began, unaware of the presence of the book bag.

{¶ 10} The jury found Rowley guilty on one count of illegal assembly or possession of chemicals for the manufacture of drugs within the vicinity of a school, and not guilty on the remaining count. The trial court sentenced Rowley to concurrent sentences of five years imprisonment for the drug conviction and eleven months imprisonment for the receiving stolen property convictions. This appeal followed.

{¶ 11} Assignment of Error No. 1:

{¶ 12} THE TRIAL COURT COMMITTED PLAIN ERROR IN ADMITTING NATIONAL PRECURSOR LOG EXCHANGE RECORDS THAT WERE NOT PROPERLY AUTHENTICATED BY THE STATE.

{¶ 13} Rowley contends the trial court committed plain error by admitting the NPLEx reports pursuant to Evid.R. 803(6) because the state failed to lay a sufficient foundation to meet the hearsay exception. Specifically, Rowley argues Hogel's testimony was insufficient to lay such foundation because he did not possess personal knowledge of the entirety of the NPLEx reports, as he was only familiar with Walmart's policies and procedures, but not the other pharmacies listed in the report. Rowley concedes that he did not object to the admission of the NPLEx reports, and thus, has waived all but plain error.

{¶ 14} "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). Plain error does not exist unless the error is obvious and but for the error, the outcome of the trial would have been different. *State v. Blacker*, 12th Dist. Warren No. CA2008-07-094, 2009-Ohio-5519, ¶ 39. Notice of plain error is taken with the utmost caution and only under exceptional circumstances to prevent a manifest miscarriage of justice. *Id.*

{¶ 15} As discussed above, all pharmacies are required to maintain records of

purchases and attempted purchases of products containing pseudoephedrine. R.C. 3715.05(B)(2) thru (4). This information is stored in a central clearinghouse, called NPLEx. R.C. 3715.05(A)(6). The pharmacy submits all attempted purchases to NPLEx categorized by the individual person. The law affirmatively imposes a duty on pharmacies to record such transactions. *State v. Coleman*, 5th Dist. Richland No. 14-CA-82, 2015-Ohio-3907, ¶ 36, discussing R.C. 3715.05. Thus, one may assume the record was made at or near the time of the purchase or attempted purchase. *Id.*

{¶ 16} With regards to admissibility, one must authenticate business records by evidence sufficient to support a finding that the matter in question is what the proponent claims. Evid.R. 901. Pursuant to Evid.R. 901(B)(10), authentication of business records "is governed by Evid.R. 803(6)." *Cent. Mortg. Co. v. Bonner*, 12th Dist. Butler No. CA2012-10-204, 2013-Ohio-3876, ¶ 14. In turn, to qualify for admission under Evid.R. 803(6),

> a business record must manifest four essential elements: (i) the record must be one regularly recorded in a regularly conducted activity; (ii) it must have been entered by a person with knowledge of the act, event or condition; (iii) it must have been recorded at or near the time of the transaction; and (iv) a foundation must be laid by the custodian of the record or by some other qualified witness.

*Bonner* at ¶ 13.

{¶ 17} Even if the proponent establishes the above elements, a business record may be excluded from evidence if "the source of information or the method or circumstances of preparation indicate lack of trustworthiness." *State v. Glenn*, 12th Dist. Butler No. CA2009-01-008, 2009-Ohio-6549, ¶ 17. "Firsthand knowledge of the transaction is not required by the witness providing the foundation; however," the witness must demonstrate he "is sufficiently familiar with the operation of the business and with the circumstances of the record's preparation, maintenance and retrieval, that he can reasonably testify on the basis of [his] knowledge that the record is what it purports to be, and that it was made in the ordinary

course of business * * *." *Glenn* at ¶ 19.

{¶ 18} Rowley's contention addresses the second and fourth elements for admittance of a business record; therefore, the questions are whether Hogel possessed sufficient knowledge of the NPLEx system and whether the state laid a sufficient foundation for Hogel's testimony regarding the contents of the couple's NPLEx reports. Rowley's argument relies on two Fifth District cases addressing admissibility of NPLEx reports under Evid.R. 803(6).

{¶ 19} In *Coleman*, the Fifth District found NPLEx reports admissible where witnesses from several individual pharmacies testified the reports were kept in the ordinary course of business and each witness had enough familiarity with the record-keeping process to explain how the records came into existence. *Coleman* at ¶ 42. Thus, "*Coleman* stands for the principle that employees of specific pharmacies who are familiar with their pharmacies' record-keeping system as it relates to NPLEx data are 'other qualified witnesses' who are competent to lay a foundation for the admission of their respective pharmacy's business records." *State v. Phillips*, 11th Dist. Lake No. 2016-L-029, 2017-Ohio-1204, ¶ 29; *see also State v. Hood*, 135 Ohio St.3d 137, 2012-Ohio-6208, ¶ 40 (defining "qualified witness" as someone with "enough familiarity with the record-keeping system of the business in question to explain how the record came into existence in the ordinary course of business"). Likewise, the Fifth District further determined in *McDonald* that the testimony of a police officer who accessed the NPLEx system combined with testimony from several pharmacists regarding their respective stores was sufficient to lay a foundation for the admission of the reports. *State v. McDonald*, 5th Dist. Fairfield No. 15-CA-45, 2016-Ohio-2699, ¶ 27, 29.

{¶ 20} While the opinions above lend guidance as to how to properly admit NPLEx reports as business records, they only affirmatively address if pharmacists may testify regarding transactions at their respective store. In other words, the question remains: is a NPLEx report properly admitted when it details transactions and attempted transactions at

several stores when the only testimony regarding the report is from a pharmacist at a single store.

{¶ 21} The Sixth Circuit Court of Appeals addressed a similar set of facts where an employee of Appriss, Inc., the company that runs the NPLEx program, testified regarding the required procedures for maintaining such records and how the information contained in the NPLEx reports becomes available to police officers. *United States v. Collins*, 799 F.3d 554, 583 (6th Cir.2015). Additional testimony was provided by two officers regarding specific purchases in the NPLEx report. *Id.* The court found NPLEx reports are admissible pursuant to Fed.R.Evid. 803(6) where the foundation provided includes evidence from a custodian of the records familiar with the system and can testify to the process by which information is retrieved. *Id.* at 584; *see also State v. Isaac*, 5th Dist. Richland No. 15CA87, 2016-Ohio-7376, ¶ 42 (stating Fed.R.Evid. 803[6] is identical to Ohio Evidence Rule 80[6]).

{¶ 22} Hogel provided extensive testimony regarding the NPLEx system and how pharmacists must use the system to be in accordance with Ohio law. Hogel explained that whenever any certain individual attempts to purchase a product containing pseudoephedrine, the NPLEx system attributes the attempted purchase to that person because the individual must furnish a government-issued photo ID. Hogel further explained that although he does not have personal knowledge of the day-to-day processes of pharmacies other than Walmart, if a pharmacy sells products containing pseudoephedrine, the pharmacy must follow the exact procedures proscribed by Ohio law. Furthermore, Ohio pharmacists can track any attempted purchase of such products, including attempted purchases at different Ohio pharmacies. Additionally, Kurkilko testified regarding specific purchases and attempted purchases within Rowley's NPLEx report in the weeks leading up to the search, which based on his training and experience are indicative of someone who manufactures methamphetamine.

{¶ 23} Thus, there was extensive testimony – as there was in *Collins* – from someone highly familiar with the NPLEx system, who uses the system daily, describing how it functions, how information is stored, and how information is retrieved. Additionally, there was police testimony regarding specific purchases and attempted purchases of pseudoephedrine leading up to the search. Therefore, we find, consistent with *Collins*, the state presented sufficient evidence to introduce the NPLEx reports pursuant to Evid.R. 803(6).

{¶ 24} Furthermore, even if the evidence were inadmissible because it does not meet the requirements under Evid.R. 803(6), we find any error in its admittance to be harmless. Crim.R. 52(A) defines harmless error as "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." A reviewing court properly finds the erroneous admission of evidence harmless error where there is overwhelming evidence of guilt or some other indicia the error did not contribute to the conviction. *State v. Pottorf*, 12th Dist. Warren No. CA2014-03-046, 2014-Ohio-5399, ¶ 20.

{¶ 25} The state presented an abundance of evidence demonstrating Rowley's guilt. Disregarding the NPLEx reports, Smith testified she and Rowley purchased pseudoephedrine from area pharmacies on several occasions leading up to the search. Smith further testified the couple manufactured methamphetamine together, and thoroughly described the process and necessary ingredients. From the search of the Wilmington residence, police located Smith and Rowley in an upstairs bedroom, which contained an open book bag holding the necessary ingredients to manufacture methamphetamine as well as a vessel that had already been used in that regard. The book bag also contained a hospital discharge document for Rowley. On-sight testing and officer observations both indicated plastic bottles in and around the location of the book bag that had been used to manufacture methamphetamine. Thus, because the state provided abundant evidence of Rowley's guilt, we find any error by the trial court admitting the NPLEx reports to be harmless. Accordingly, Rowley's first assignment of

error is overruled.

{¶ 26} Assignment of Error No. 2:

{¶ 27} THE COURT COMMITTED PLAIN ERROR IN PERMITTING SCIENTIFIC TESTIMONY WHEN THE WITNESS WAS NOT QUALIFIED AS AN EXPERT UNDER EVID.R. 702.

{¶ 28} Rowley contends Schweitzer provided impermissible scientific testimony because he was not qualified as an expert witness pursuant to Evid.R. 702. Rowley concedes Schweitzer was permitted to testify pursuant to Evid.R. 701 regarding the manufacture process of methamphetamine. However, Rowley claims the trial court erred by permitting Schweitzer to testify regarding the on-sight methamphetamine lab testing conducted during the search. Further, since Schweitzer's testimony regarding such testing was improper, the trial court's admittance of photographs taken during the on-sight testing was also improper. Rowley concedes that he did not object to the testimony or the admission of the photographs, and thus, has waived all but plain error.

{¶ 29} Evid.R. 702 governs the admission of expert testimony:

A witness may testify as an expert if all of the following apply:

(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

(2) The design of the procedure, test, or experiment reliably implements the theory;

(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.

{¶ 30} Rowley cites a Fifth District opinion to support his contention that Schweitzer's testimony and the supporting photographs were inadmissible because the state did not offer such evidence pursuant to Evid.R. 702. *See State v. Frye*, 5th Dist. Stark No. 2006CA00363, 2007-Ohio-7111, ¶ 27-33. However, contrary to Rowley's belief otherwise, the Fifth District's findings support the admission of such evidence. The Fifth District found the trial court's decision to admit an officer's testimony regarding methamphetamine labs did not constitute plain error because it related to matters beyond the knowledge and experience of the jury, was based upon specialized knowledge and training, assisted the trier of fact in understanding the evidence and determining a fact in issue, was relevant and material, and had a probative value which outweighed any prejudicial impact. *Id.* at ¶ 33.

{¶ 31} Similar to *Frye*, Schweitzer testified regarding his law enforcement experience as a member of the Warren County Drug Task Force, specialized training in drug investigations through the state of Ohio and the DEA, on-the-job training experience with drug investigations, and training relating to the identification and disassembly of methamphetamine labs. Thus, Schweitzer possessed knowledge and experience beyond that of the jury based upon specialized training, which assisted the trier of fact in determining whether the vessels were used to manufacture methamphetamine. This information was relevant and material to the crimes alleged and its probative value outweighed any prejudicial effect. Therefore, the trial court's decision to admit such evidence, including the photographs, did not constitute plain error and Rowley's second assignment of error is overruled.

{¶ 32} Assignment of Error No. 3:

- 11 -

{¶ 33} THE COURT COMMITTED PLAIN ERROR IN PERMITTING IMPROPER REMARKS BY THE STATE DURING CLOSING ARGUMENT.

{¶ 34} Rowley contends the state made several improper comments in its closing argument, which prejudicially affected Rowley's rights to a fair trial.

{¶ 35} The test for prosecutorial misconduct is whether the remarks made by the prosecution were improper and, if so, whether they prejudicially affected substantial rights of the accused. *State v. Smith*, 14 Ohio St.3d 13, 14 (1984). The touchstone of the analysis is the fairness of the trial, not the culpability of the prosecutor. *State v. Lott*, 51 Ohio St.3d 160, 166 (1990). An appellate court will not deem a trial unfair where a review of the entire trial demonstrates beyond a reasonable doubt the jury would have found the defendant guilty even without the improper comments. *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, ¶ 121.

{¶ 36} A prosecutor is afforded wide latitude in closing arguments. *State v. Lamb*, 12th Dist. Butler Nos. CA2002-07-171 and CA2002-08-192, 2003-Ohio-3870, ¶ 28. A reviewing court examines a closing argument in its entirety to determine whether a prosecutor's remarks were prejudicial. *State v. Loza*, 71 Ohio St.3d 61, 79 (1994). It is improper for an attorney to express his personal belief or opinion as to the credibility of a witness or as to the guilt of the accused. *Smith* at 14. A prosecutor must avoid going beyond the evidence before the jury. *State v. Israel*, 12th Dist. Butler No. CA2010-07-170, 2011-Ohio-1474, ¶ 45.

{¶ 37} Rowley cites several remarks in the transcript to support his prosecutorial misconduct argument. The state claims the cited comments merely restate the evidence presented during trial and, even assuming arguendo, the comments were improper, the outcome of the trial would not have been different. We have reviewed the prosecutor's statements cited by Rowley in the context of the entire closing argument and find either no

error or harmless error.

{¶ 38} First, Rowley contends the prosecutor vouched for the credibility of Smith by stating, "I would say that based on her testimony, she was truthful and that there is no reason for her to be deceptive at this point." While Rowley correctly asserts a prosecutor shall not express his personal belief as to a witness' credibility, his argument fails to consider the prosecutor prefaced his statement with the following: "[n]ext, we have the testimony of Amanda Smith. You are the judge of her credibility." Considering the prosecutor correctly noted to the jurors, they are to determine the credibility of a witness, any misstep by the prosecutor is so slight, it clearly does not rise to the level of prosecutorial misconduct.

{¶ 39} Second, Rowley argues the prosecutor interjected his personal belief regarding evidence in the case. The prosecutor stated, "[t]here's going to be a lot of issues about whose bag it was, where it was located. But at this point, I believe that the evidence shows that this Defendant was aware of the chemicals in that bag." Again, the remark does not rise to the level of prosecutorial misconduct. The comment explains the evidence presented at trial, albeit, in a manner the prosecutor could improve upon, but not to the extent that Rowley was denied a fair trial. Our review is not guided by an analysis of the performance of the prosecutor, but whether the alleged improper remarks denied the accused a fair trial. *See, e.g., State v. Layne*, 12th Dist. Clermont No. CA2009-07-043, 2010-Ohio-2308, ¶ 59-60 (finding no prosecutorial misconduct where prosecutor prefaced remarks regarding evidence with "I think" because defendant was afforded a fair trial).

{¶ 40} Third, Rowley asserts the prosecutor commented on issues outside the record and, again, vouched for the credibility of Smith. Specifically, Rowley claims error with respect to the following comment regarding Smith: "[y]es, she is getting consideration for her testimony, but that's what happens when you tell the truth. You get the benefit of it when you cooperate. That is very common and that's what happens in our criminal justice system."

Additionally, Rowley takes issue with the prosecutor's remark regarding Kurkilko's testimony: "[h]e was able to visually see the school from the house * * *."

{¶ 41} With regards to the prosecutor's comment about Smith and the common practices of the criminal justice system, we find any alleged error harmless because the outcome of the trial would not have been different in the absence of such comments. Smith testified she received consideration for her testimony at trial and Rowley was provided ample opportunity to impeach Smith on this issue through cross-examination as well as he addressed the issue in his closing argument. Furthermore, the prosecutor's remarks concerning the criminal justice system provided context for the consideration Smith received, and ultimately, it is up to the jury to weigh the credibility of the evidence. Moreover, the trial court instructed the jury that closing arguments were not evidence and we presume the jury will follow the instructions given to it by the judge. *State v. Loza*, 71 Ohio St.3d 61, 79 (1994).

{¶ 42} In considering the prosecutor's remarks concerning Kurkilko's testimony, we find any alleged error harmless. The prosecutor stated Kurkilko could visually see the school from the searched residence, *and* that Kurkilko looked up the location of the residence on the county auditor's website to determine the residence was located within the 1,000 feet of a school. While Rowley correctly asserts the prosecutor's remark about seeing the school is absent from Kurkilko's testimony, such error is harmless because it restated the evidence presented in a different manner, which was that Kurkilko determined the location of the residence was within 1,000 feet of a school. Absent the remark concerning Kurkilko's line of sight from the residence, the outcome of the trial would not have been different. Accordingly, Rowley's third assignment of error is overruled.

{¶ 43} Assignment of Error No. 4:

{¶ 44} THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR

ACQUITTAL PURSUANT TO RULE 29 OF THE OHIO RULES OF CRIMINAL PROCEDURE AS THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW.

{¶ 45} Assignment of Error No. 5:

{¶ 46} THE ENTRY OF THE TRIAL COURT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 47} Rowley argues the trial court erred by overruling his Crim.R. 29 motion for acquittal at the close of the state's evidence because the state presented insufficient evidence to establish every element of the charged offense, as well as the additional finding the offense occurred within 1,000 feet of a school, beyond a reasonable doubt. Rowley further contends his conviction is against the manifest weight of the evidence. In so doing, Rowley renews his claims the trial court should have excluded the NPLEx reports, Schweitzer's testimony, and the exhibits admitted therefrom. And in turn, that the remaining evidence establishes his conviction is against the manifest weight of the evidence. However, in consideration of our previous findings that the trial court properly admitted such evidence, we will consider it in our manifest weight and sufficiency reviews.

{¶ 48} "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith*, 80 Ohio St.3d 89, 102 (1997). Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law. *Id.*, citing *Black's Law Dictionary* (6th Ed.1990) 1433. A conviction based on legally insufficient evidence constitutes a denial of due process. *Tibbs v. Florida*, 457 U.S. 31, 45, 102 S.Ct. 2211 (1982), citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781 (1979). The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact

could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 259-60 (1991), *superseded by constitutional amendment on other grounds as stated by Smith* at 102. In evaluating the sufficiency of the evidence, this court "defer[s] to the trier of fact on questions of credibility and the weight assigned to the evidence." *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, ¶ 132. "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *Thompkins* at 387.

{¶ 49} In contrast to a sufficiency of the evidence challenge, a manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. In making this determination, a reviewing court looks at the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses, and determines whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34. "An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal." *State v. Couch*, 12th Dist. Butler No. CA2016-03-062, 2016-Ohio-8452, ¶ 8.

{¶ 50} "A reversal based on the weight of the evidence * * * can occur only after the State both has presented *sufficient evidence* to support conviction and has persuaded the jury to convict." (Emphasis added.) *Tibbs* at 42-43; *see also State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19 (stating that finding a conviction is supported by the manifest weight of the evidence is also dispositive of the issue of sufficiency). Therefore,

"[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." *State v. Hart*, 12th Dist. Brown No. CA2011-03-008, 2012-Ohio-1896, ¶ 43.

{¶ 51} After a thorough review of the record, we find the state presented sufficient evidence that would allow the jury to conclude beyond a reasonable doubt that Rowley committed the offense of illegal assembly or possession of chemicals for the manufacture of drugs within the vicinity of a school. Furthermore, we do not find the jury clearly lost its way and created such a manifest miscarriage of justice to require reversal of Rowley's conviction.

{¶ 52} Pursuant to R.C. 2925.041(A), "[n]o person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of [R.C. 2925.04]." "If the offense was committed in the * * * vicinity of a school," the offense is a felony of the second degree. R.C. 2925.041(C); *State v. Gregory*, 9th Dist. Summit No. 27523, 2015-Ohio-4901, ¶ 12 (a special finding the offense was committed in the vicinity of a school is a strict liability finding). Pursuant to R.C. 3719.41, methamphetamine is a Schedule II controlled substance.

{¶ 53} The testimony presented by the state demonstrated that a search of the Wilmington residence revealed a book bag that officers immediately identified as a possible methamphetamine lab. The officers found the book bag sitting next to a bed in a room where Smith and Rowley currently resided. Officers located Smith and Rowley in the room when the search began. The Warren County Drug Task Force responded to the residence based on the initial officer's identification of the book bag as a suspected methamphetamine lab. A search of the book bag revealed several items indicative of a methamphetamine lab, including a syringe, a digital scale, several plastic bags, plastic bottles which appeared to contain an organic solvent, cold packs, ammonium nitrate, lithium batteries, and vice grips.

- 17 -

Additionally, the book bag contained paperwork identifying Smith and Rowley. Smith testified the book bag belonged to her, and that the one-pot methamphetamine lab belonged to her and Rowley. Schweitzer conducted several tests to detect the presence of ammonia and organic solvent in the plastic bottles, with positive results for each.

{¶ 54} Kurkilko testified that during his investigation a review of the county auditor's website demonstrated the searched residence was located within 1,000 feet of a school. Kurkilko's investigation also included a review of the NPLEx reports for Smith and Rowley, which showed the couple individually purchased and attempted to purchase pseudoephedrine on several occasions in the weeks leading up to the search of the Wilmington residence. Hogel, a clinical pharmacist from Walmart, testified extensively regarding the parameters of the NPLEx system, and likewise, identified several instances the two attempted to purchase pseudoephedrine at several pharmacies, including, but not limited to, Walmart stores Hogel oversaw. Smith's testimony was consistent with the NPLEx reports showing the purchases and attempted purchases.

{¶ 55} The evidence presented overwhelmingly supports the jury's finding Rowley knowingly assembled or possessed one or more chemicals that may be used to manufacture methamphetamine. Rowley contends Smith's testimony was self-serving and should be discounted because she received consideration for her testimony. However, the jury found her testimony believable and we defer to the factfinder with respect to credibility determinations. Any purported avenues for discrediting her testimony are corroborated by other evidence in the record. Smith did testify she owned the book bag, but it also contained Rowley's hospital discharge papers and was in the room in which Rowley resided at the time of the search. Rowley's NPLEx report details several instances where he purchased and attempted to purchase pseudoephedrine, the main ingredient used to produce methamphetamine. Moreover, Kurkilko testified that based on his training and experience, a

review of Rowley's NPLEx report indicates someone who likely manufactures methamphetamine. With respect to sufficiently proving the special finding that the offense occurred within the vicinity of a school, the jury found Kurkilko's testimony credible that his investigation revealed the residence was within 1,000 feet of a school.

{¶ 56} Rowley testified on his own behalf and adamantly denied his involvement with respect to the methamphetamine lab found at the Wilmington residence. Rowley explained that he has manufactured methamphetamine with Smith in the past, but not on this occasion. Rather, Rowley explained that he was simply sleeping in the room when the search began, unaware of the presence of the book bag. While Rowley denies any knowledge or involvement of the methamphetamine lab, the inclination of the greater amount of credible evidence clearly supports the jury's findings. Therefore, we do not find the jury clearly lost its way or created such a manifest miscarriage of justice that Rowley's conviction must be reversed. Accordingly, Rowley's fourth and fifth assignments of error are overruled.

{¶ 57} Assignment of Error No. 6:

{¶ 58} THE APPELLANT WAS DENIED HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL PURSUANT TO ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION.

{¶ 59} Rowley argues the cumulative effect of his trial counsel's errors, as alleged above, denied him a fair trial. Rowley claims his attorney was deficient because he only objected one time during trial, did not file a pretrial motion in limine to exclude evidence, and did not demand Schweitzer be qualified as an expert. Rowley further attacks his counsel's trial strategy because the sole theory in Rowley's defense was that he lacked the requisite knowledge for the charged offense. Therefore, on these bases, Rowley contends the outcome of the trial would have been different.

{¶ 60} To prevail on an ineffective assistance of counsel claim, an appellant must establish: (1) that his trial counsel's performance was deficient; and (2) that such deficiency prejudiced the defense to the point of depriving the appellant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S.Ct. 2052 (1984); *State v. Ullman*, 12th Dist. Warren No. CA2002-10-110, 2003-Ohio-4003, ¶ 43. Trial counsel's performance will not be deemed deficient unless it "fell below an objective standard of reasonableness." *Strickland* at 688. To show prejudice, a defendant must prove there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Wilson*, 12th Dist. Madison No. CA2013-10-034, 2014-Ohio-2342, ¶ 17. A defendant's failure to satisfy one part of the *Strickland* test negates a court's need to consider the other. *State v. Hurst*, 12th Dist. Brown No. CA2014-02-004, 2014-Ohio-4890, ¶ 7.

{¶ 61} Rowley's discontent with his counsel's alleged failure to object lies with the admission of the NPLEx reports, Schweitzer's testimony regarding the tests he performed on the plastic bottles, and the prosecutor's remarks during closing arguments. However, we previously found each contention meritless under Rowley's other assignments of error, and thus, the instances do not equate to a finding Rowley's trial counsel was deficient for not objecting. Rowley further contends deficiency by his trial counsel for failing to renew his Crim.R. 29 motion for acquittal at the close of all the evidence. Again, we resolved Rowley's contention his conviction was not supported by sufficient evidence and against the manifest weight of the evidence; therefore, Rowley cannot demonstrate the outcome of the proceeding would have been different had his counsel renewed his motion for acquittal.

{¶ 62} Finally, Rowley contends the alleged errors, taken in conjunction with his counsel's trial strategy to demonstrate the state could not prove the knowledge element of the charged offense, necessitate a finding of deficiency. However, there is a strong

presumption that counsel has rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *State v. Hendrix*, 12th Dist. Butler No. CA2012-05-109, 2012-Ohio-5610, ¶ 14, citing *Strickland* at 690. It is not the appellate court's role to second guess trial counsel's strategic decisions. *State v. Lloyd*, 12th Dist. Warren Nos. CA2007-04-052 and CA2007-04-053, 2008-Ohio-3383, ¶ 61. "The decision regarding which defense to pursue at trial is a matter of trial strategy, and trial strategy decisions are not the basis of a finding of ineffective assistance of counsel." *State v. Kinsworthy*, 12th Dist. Warren No. CA2013-06-053, 2014-Ohio-1584, ¶ 43, citing *State v. Murphy*, 91 Ohio St.3d 516, 524 (2001).

{¶ 63} Accordingly, Rowley's sixth assignment of error is overruled.

{¶ 64} Judgment affirmed.

S. POWELL and PIPER, JJ., concur.