[Cite as *Hamilton v. Premier Auto Mart, Inc.*, 2019-Ohio-2493.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| CITY OF HAMILTON, | : | |
| Appellee, | : | CASE NO. CA2019-01-002 |
| - vs - | : | O P I N I O N<br>6/24/2019 |
| | : | |
| PREMIER AUTO MART, INC., | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM CITY OF HAMILTON MUNICIPAL COURT
Case No. 18CRB03495


Neal D. Schuett, City of Hamilton Prosecuting Attorney, 345 High Street, 2nd Floor, Hamilton, Ohio 45011, for appellee

Law Offices of Krista Ray Cure, Krista Ray Cure, 3805 Edwards Road, Suite 550, Cincinnati, Ohio 45209, for appellant


**S. POWELL, J.**

{¶ 1} Appellant, Premier Auto Mart, Inc. ("Premier Auto"), appeals its conviction in the Hamilton Municipal Court for operating a junkyard without proper authorization from the Hamilton City Council in violation of Section 1150.40 of the Hamilton Zoning Ordinance

("HZO").[1]  For the reasons outlined below, we affirm.

{¶ 2}    Premier Auto is an automobile sale, service, and repair business that is owned and operated by Gregory S. Myers.  Premier Auto is located in Hamilton at 816 South Erie Highway.  Although opening its business in 1995, Premier Auto has conducted its business at the South Erie Highway location since 2001.  There is no dispute that the property where Premier Auto is located is included within an I-2 Industrial Zoning District.  There is also no dispute that automobile sales, service, and repair are permitted conditional uses in an I-2 Industrial Zoning District.

{¶ 3}    On May 30, 2018, Premier Auto received a notice of violation that it was in violation of Section 1150.40 of the HZO.  Pursuant to that ordinance:

> It shall be unlawful to use or occupy or permit the use or occupancy of any building or premises, or both, or part thereof hereafter created, erected, changed, converted or wholly or partly altered or enlarged in its use or structure until a Certificate of Zoning Compliance shall have been issued therefore by the City Manager or Designee stating that the proposed use of the building or land conforms to the requirements of this Ordinance.

{¶ 4}    The notice was sent to Premier Auto after an inspection of its property revealed it was operating an unauthorized junkyard.  Specifically, the notice alleged:

> There are multiple wrecked, disassembled and inoperable vehicle, auto body and engine parts that are being salvaged for parts to fix other autos.  This office has no record of a conditional use approval for an auto salvage/junkyard at this location.  Cease all salvage operations and remove all wrecked and [disassembled] vehicles, engine and auto body parts from the property by June 17, 2018.

{¶ 5}    Pursuant to Section 1108.00 of the HZO, a junkyard is defined as:

> A place where waste, discarded or salvaged materials are bought, sold, exchanged, baled, packed, disassembled or handled; including auto wrecking yards, house wrecking yards, used material yards, but not including pawn shops, antique

---

1. Pursuant to Loc.R. (6)(A), we sua sponte remove this appeal from the accelerated calendar for the purpose of issuing this opinion.

shops, and places for the sale, purchase, or storage of used furniture and household equipment, used cars in operable condition or salvaged materials incidental to manufacturing operations.

{¶ 6} On August 22, 2018, a complaint was issued charging Premier Auto with violating Section 1150.40 of the HZO. The complaint alleged that Premier Auto – and by extension Myers – failed to discontinue operating the unauthorized junkyard on its property as instructed by the notice of violation. The complaint was based on allegations that Premier Auto had continued salvaging "wrecked automobile parts to repair other automobiles for sale" despite being told to cease those operations by June 17, 2018. A violation of Section 1150.40 constitutes an unclassified misdemeanor that carries a fine ranging between $250 to $500 for each offense.

{¶ 7} On September 27, 2018, the matter was tried to the bench. During trial, the trial court heard testimony from two witnesses; Myers and Larry Bagford, a planning and zoning inspector with the city of Hamilton. Bagford testified that the notice of violation was sent to Premier Auto after he observed "multiple unlicensed vehicles" parked on the property that "looked like they wouldn't run because they were damaged in some way." Bagford also testified there were automobile parts laying "outside of his shop area" where "there's all kinds of body parts. Fenders, bumpers, hoods. That kind of thing." This, according to Bagford, created a problem of "salvaging," "disassembling," and "exchanging of parts." This was in addition to those automobiles sitting "around there for long periods of time like most junk yards."

{¶ 8} Continuing, Bagford testified regarding the condition of Premier Auto's property. As Bagford testified:

> [U]sually a trailer sitting there that has parts sitting on it that I assume go to uh – take to the scrap yard because they're already damaged and not working anything other than salvage.
> * * * Um – there are multiple cars in various stages of

disassembling and wrecked and parts laying around um – on top of other vehicles. Uh – there's one van that's um – been parked in the same spot that has its back end bashed in that's been there for at least six months.

{¶ 9} Bagford was then shown several photographs of Premier Auto's property he had taken approximately two months earlier to compare with other photographs he had taken earlier that day. Bagford testified the photographs showed a fenced in area on Premier Auto's property with numerous vehicles, tires, trailers, auto body parts, and "wrecked vehicles" that had "parts laying on top of them." When asked if the photographs depicted the property in similar conditions to when the notice of violation was originally issued, Bagford testified "Yes. Those same vehicles. * * * Some are the very same vehicles." Bagford also testified that "[b]y looking at the pictures of the cars and the damage that is done to them some of them not even having engines, it's obviously they're not running." This court's review of these same photographs confirms Bagford's testimony.

{¶ 10} In Premier Auto's defense, Myers testified that Premier Auto was not operating an unauthorized junkyard on its property as alleged by the complaint. Myers instead testified the automobiles and automobile parts observed on the property were all part of Premier Auto's business model. As Myers testified, "it's like the housing business. You know people buy houses and they get them ready and they flip them, I do the same thing with cars." Myers also testified that Premier Auto never sold any of the auto parts that were removed from the automobiles observed on its property, nor did Premier Auto sell any automobiles for scrap metal. Rather, according to Myers, the only work Premier Auto did on the automobiles located on the property was to make them operable and sell them off. This was because, as Myers testified, "I don't have time to go out and buy cars just to * * * scrap them or sell parts or whatever."

{¶ 11} On November 29, 2018, the trial court issued a decision finding Premier Auto

guilty of violating Section 1150.40 of the HZO. In so holding, the trial court initially stated:

> The issue is whether the Defendant buys some damaged vehicles simply to use as donor cars, using the parts from them for other cars, and stores those donor cars at the lot. In this case the photographs show multiple vehicles parked on the Defendant's lot. They are in obvious disrepair and many have not been moved from the photos taken July 26, 2018 to the photos taken September 27, 2018. The Court notes that in these photos a white van, badly damaged, is parked in front of a dark sedan, and behind a red vehicle. The vehicles do not appear to have been moved over the time frame in the photos.

{¶ 12} The trial court then set forth its holding as follows:

> It is the finding of the Court that the Defendant is using the property in question as a junkyard, that it does not have the required Certificate of Zoning Compliance and therefore it is in violation of HZO 1150.40. The Court finds this to have been proven by proof beyond a reasonable doubt. The Defendant's storage and dissassemblage (sic) of vehicles on the property falls within the definition of junkyard as set forth in the HZO. He has not obtained the appropriate approval to operate a junkyard and therefore is in violation of the ordinance.

{¶ 13} In reaching this decision, the trial court rejected Premier Auto's claim that Section 1150.40 of the HZO was unconstitutionally overbroad. The same was true in regard to Premier Auto's constitutional challenge to the definition of junkyard as set forth in Section 1108.00. Specifically, as the trial court stated:

> The Defendant's argument that the ordinance is overbroad is also without merit. * * * Here no case law was cited to support this claim. It was argued that merely handling a salvaged part might fall within the ordinance's prohibition. However, this case is not one of merely handling a part. It involves storage and dissassemblage (sic) of severely damaged, inoperable vehicles. For many reasons, including aesthetic concerns for the businesses around the Defendant's place of business, the city has an interest in regulating the location of junkyards. This Court finds the Ordinance involved is not overbroad.

Premier Auto now appeals its conviction, raising two assignments of error for review.

{¶ 14} Assignment of Error No. 1:

{¶ 15} THE FINDING OF GUILTY IS AGAINST THE MANIFEST WEIGHT OF THE

EVIDENCE.

{¶ 16} In its first assignment of error, Premier Auto argues the trial court's decision finding it in violation of Section 1150.40 of the HZO must be reversed since the trial court's finding of guilt was against the manifest weight of the evidence. We disagree.

{¶ 17} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, this court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34 (12th Dist.). This court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *State v. Blair*, 12th Dist. Butler No. CA2014-01-023, 2015-Ohio-818, ¶ 43.

{¶ 18} Premier Auto argues the trial court's decision must be reversed because the record contains no "admissible evidence" to prove it was operating an unauthorized junkyard on its property. Premier Auto instead argues the only evidence to support the trial court's decision was improper hearsay testimony elicited from Bagford. Specifically, Bagford's testimony that he received a call from "a lady who identified herself as the office manager" at Premier Auto who told him "yeah, we bring in cars. We take parts off of them to fix [other cars]." Over Premier Auto's objection, the trial court found Bagford's testimony was admissible as a non-hearsay admission of a party-opponent under Evid.R. 801(D)(2)(d). Therefore, according to Premier Auto, because this testimony should have

been excluded from trial, the trial court's decision finding it in violation of Section 1150.40 of the HZO must be reversed. We find no merit to Premier Auto's claim.

{¶ 19} Pursuant to Evid.R. 801(D)(2)(d), a statement is not hearsay if the statement is offered against a party and is "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship[.]" While Premier Auto concedes that the challenged statement would have been admissible if it had come from any one of its "automobile mechanic employees," we see no reason why this would be any different because the statement came from its office manager. Although Premier Auto argues that its office manager handles only "administrative tasks," common sense dictates that an office manager would be aware of the general nature of the business for which he or she was employed. That is certainly the case here when considering it was the office manager who contacted Bagford to inquire about the notice of violation that Premier Auto received. This goes well beyond what would be considered just an administrative task left to low-level support staff.

{¶ 20} Regardless, while Bagford's testimony concerning his conversation with Premier Auto's office manager was illustrative of its general business practices, that testimony was in no way the only evidence submitted to support the trial court's decision. Contrary to Premier Auto's claim, there exists extensive evidence to support the trial court's finding of guilt. Therefore, because overwhelming evidence exists to support the trial court's guilt finding, the trial court's decision to admit Bagford's challenged testimony would constitute, at worst, harmless error. "A reviewing court properly finds the erroneous admission of evidence harmless error where there is overwhelming evidence of guilt or some other indicia the error did not contribute to the conviction." *State v. Rowley*, 12th Dist. Clinton, 2017-Ohio-5850, ¶ 24, citing *State v. Pottorf*, 12th Dist. Warren No. CA2014-03-046, 2014-Ohio-5399, ¶ 20.

{¶ 21} As noted above, Bagford provided uncontroverted testimony that he had observed "multiple unlicensed vehicles" parked on Premier Auto's property that "looked like they wouldn't run because they were damaged in some way." Bagford also testified there were automobile parts laying "outside of his shop area" where "there's all kinds of body parts. Fenders, bumpers, hoods. That kind of thing." This was in addition to Bagford's testimony that "there's one van that's um – been parked in the same spot that has its back end bashed in that's been there for at least six months." Bagford further testified that "some of them not even having engines, it's obviously they're not running." This, as Bagford testified, created a problem of "salvaging," "disassembling," and "exchanging of parts." Bagford's testimony was confirmed by several photographs taken of Premier Auto's property admitted as evidence by the trial court.

{¶ 22} Based on the testimony and evidence presented, the trial court found Premier Auto "was using the property in question as a junkyard, that it does not have the required Certificate of Zoning Compliance and therefore it is in violation of HZO 1150.40." The trial court also found that Premier Auto's "storage and dissassemblage (sic) of vehicles on the property falls within the definition of junkyard as set forth in the HZO." We agree. Therefore, because this is not one of those extraordinary cases when the evidence presented at trial weighs heavily in favor of acquittal, but rather a case in which there exists extensive and overwhelming evidence to support the trial court's finding of guilt, the trial court's decision finding Premier Auto in violation of Section 1150.40 of the HZO was not against the manifest weight of the evidence. Accordingly, finding no error in the trial court's decision, Premier Auto's first assignment of error lacks merit and is overruled.

{¶ 23} Assignment of Error No. 2:

{¶ 24} THE TRIAL COURT ERRED BY FINDING DEFENDANT GUILTY OF HAMILTON MUNICIPAL ORDINANCE SECTION 1150.40.

{¶ 25} In its second assignment of error, Premier Auto argues the trial court's decision finding it in violation of Section 1150.40 of the HZO must be reversed since its "incidental storage" of inoperable automobiles and automobile parts was a permissible accessory use to its authorized automobile sale, service, and repair business. However, as discussed more fully above, nothing about Premier Auto's extensive, continual, and prolonged storage of inoperable automobiles and automobile parts could be considered "incidental" to its otherwise legitimate business enterprise of operating an automobile sale, service, and repair shop. The record instead indicates Premier Auto was operating an unauthorized junkyard in violation of Section 1150.40 of the HZO. Premier Auto's claims lack merit.

{¶ 26} Also lacking merit is Premier Auto's claim that the trial court's decision must be reversed since Sections 1150.40 and 1108.00 of the HZO are unconstitutionally overbroad. "A statute or ordinance may be overbroad, 'if in its reach it prohibits constitutionally protected conduct.'" *State v. Brownfield*, 12th Dist. Butler No. CA2012-03-065, 2013-Ohio-1947, ¶ 19, quoting *Grayned v. Rockford*, 408 U.S. 104, 114, 92 S.Ct. 2294 (1972). "The party alleging that a statute is unconstitutional must prove this assertion beyond a reasonable doubt in order to prevail." *City of Hamilton v. Hendrix*, 144 Ohio App.3d 328, 332 (12th Dist. 2001), quoting *State v. Collier*, 62 Ohio St.3d 267, 269 (1991). This is because "[a]ll legislative enactments, whether of a municipality or state, enjoy a strong presumption of validity." *Brownfield* at ¶ 8, citing *Cahill v. Lewisburg*, 79 Ohio App.3d 109, 117 (12th Dist.1992), citing *Benevolent Assn. v. Parma*, 61 Ohio St.2d 375, 377 (1980).

{¶ 27} Premier Auto claims both Section 1150.40 and Section 1108.00 of the HZO are unconstitutionally overbroad since "a multitude of lawful activities, necessary in the repair of automobiles, would render a property a 'junk yard,' without taking into account the primary use of the property." However, when reviewing the plain language of the

ordinances in question, we find neither Section 1150.40 nor Section 1108.00 are overbroad in that neither ordinance infringes on Premier Auto's property rights. We find both ordinances are also rationally related and specifically tailored to the legitimate purpose of public safety in regulating the location of junkyards. "Legislative concern for public safety is not only a proper police power objective, it is a mandate." *Sebastian v. Village of Georgetown*, 146 Ohio App.3d 227, 231 (12th Dist.2001), citing *Arnold v. City of Cleveland*, 67 Ohio St.3d 35, 47 (1993). Therefore, finding no merit to any of the arguments raised by Premier Auto herein, Premier Auto's second assignment of error also lacks merit and is overruled.

**{¶ 28}** Judgment affirmed.

HENDRICKSON, P.J., and RINGLAND, J., concur.